U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

SEP 1 9 2018

TONY R. MOORE, CLERK
BY _____

## IN THE UNITED STATES DISTRICT COURT DISTRICT FOR THE WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **AARON GUIDRY, member of Warriors For Christ and Special Forces Of Liberty, LT MARK CHRISTOPHER SEVIER, De Facto Attorney Generals and Special Forces Of Liberty,  SGM JOHN GUNTER JR, Special Forces Of Liberty, WHITNEY KOHL, Special Forces Of Liberty, JOAN GRACE HARLEY, Special Forces Of Liberty,  PASTOR RICH PENKOSKI, Warriors For Christ and Special Forces Of Liberty** | **Case No:** 6:18cv1232 |
| **V.** | |
| **TERESA ELBERSON, director of the Lafayette Public Library, JOHN BEL EDWARDS, in his official capacity as Governor of Louisiana, JEFFREY MARTIN LANDRY, in his official capacity of Attorney General of Louisiana, Hon. STUART R.  SHAW, in his official capacity as the Red River Parish Clerk, JOEL ROBIDEAUX, in his official capacity as Mayor of Lafayette** *Defendants* | |

## COMPLAINT FOR INJUNCTIVE RELIEF
## INTRODUCTION

Marriagerestorationact.com
https://youtu.be/VhFM-Hg7298

*"Silence in the face of evil is itself evil: God will not hold us guiltless. Not to speak is to speak. Not to act is to act." - Dietrich Bonhoeffer*

1. NOW COMES, Plaintiffs, Aaron Guidry, a member of Louisiana chapter of warriors for

Christ and Special Forces Of Liberty and louisiana taxpayer; Mark Christopher Sevier Esq., a

Louisiana taxpayer, former Command Judge Advocate General, Congressional Liaison between

the House and Senate Special Investigation Unit on Judicial Corruption, a member of the De

Facto Attorney Generals, a member of the Special Forces Of Liberty, and self-identified

objectophile; Grace Harley, a taxpayer, a member of the Special Forces Of Liberty, and a former

transgender activist, who now self-identifies as a polygamist; Whitney Kohl, a taxpayer, a

member of the Special Forces Of Liberty, and former self-identified lesbian activist, who now

self-identifies as a polygamist, and SGM John Gunter Jr, a taxpayer, a member of the Special

Forces Of Liberty, Federal and State lobbyist, and self-identified polygamists; and Pastor Rich

Penkoski, a member of the Louisiana Chapter of Warriors for Christ and Special Forces of

Liberty seeking preliminary and permanent injunctive relief.  The Plaintiffs are part of the

Special Forces Of Liberty, which is working on tax legislation in this State. (See Declaration of

the Special Forces Of Liberty;; see the Human Trafficking Prevention Act and the Admission

Act).  The Plaintiffs, as card carrying members of the Lafayette Public Library and as ardent tax

lobbyist in Louisiana, have a vested interest in how the State spends tax dollars generated by the

Plaintiffs' legislative efforts.  The Plaintiffs have a logical nexus to the Library, having

interfaced with it and having scheduled meetings there for secular purposes.  Despite their

interaction with the library, the Plaintiffs have been denied equal treatment under the law for

their religious and political beliefs compared to the treatment of devout Secular Humanists, who

self-identify as transgender and who are proactively seeking to erode community standards of

decency and entangle the government with their narrow, shallow, and exclusive religious

worldview.  The Plaintiffs object to self-identified transgenders exploiting the state's

endorsement of their religious ideology in an government endorsed effort to brainwash and

indoctrinate minors to a religious worldviews on sex, faith, truth, gender, morality, and marriage

in a manner that excessively entangles the government with the religion of

postmodern-western-individualistic-moral relativism - referred to mainly by the Plaintiffs and the

United States Supreme Court as "Secular Humanism." By endorsing transgenderism in the

manner complained of the city of Lafayette is relegating Christians to second class citizens.

Because the Drag Queen Story hour is scheduled for October 6, 2018, the Petitioners seek an

immediate ex parte preliminary injunction until it can be resolved whether the Library's decision

to endorse the Drag Queen Story hour violates the First Amendment Establishment Clause of the

United States Constitution.

Like in *Obergefell v. Hodges,* 135 S.Ct. 2584 (2015), "this case concerns only what

states may do under the Constitution" in determining (1) how the Constitution permits the States

to legally define marriage, (2) which types of marriages the States can legally recognize, (3)

whether State facilities can host one religious organization over another, and (4) how the state is

required to respond to self-asserted sex-based identity narratives that are questionably real,

moral, and have a tendency to erode community standards of decency.  The Plaintiffs seek a

declaration and preliminary and permanent injunction under the First Amendment Establishment

Clause to enjoin the State from (1) legally recognizing gay marriage, from (2) enforcing any

conversion therapy ban, from enforcing any policy that endorses transgenderism, from (3)

enforcing any policy that treats sexual orientation as if it is a civil rights issue predicated on

immutability, from (4) enforcing any policy that allows for individuals to change their

self-evident gender to a different on their birth certificate, or any other policy that respects the

dogma from the LGBTQ church. Those policies violate the First Amendment Establishment

clause by a landslide by (1) constituting a non-secular sham, for (2) serving as an defensible

legal weapon against non-observers, and for (3) excessive entanglement of government with the

religion of Secular Humanism.  See the attached Marriage And Constitution Restoration Act,

concurrent resolution, and resolution that Secular Humanism is a religion templates forwarded to

legislative research counsel for drafting to be introduction at the 2019 legislative session by

sponsors assigned to the committees with paramount jurisdiction for vote.  The First Amendment

Establishment Clause of the United States Constitution reads "[the government] shall make no

law respecting an establishment of religion."  The First Amendment Establishment Clause

applies to the State of Louisiana through the Fourteenth Amendment.  The Defendants are guilty

of enforcing policies that respect LGBTQ policies in a manner that fails all three prongs of the

Lemon Test set forth in *Lemon v. Kurtzman*, 403 U.S. 602 (1971) from every angle.  To pass

muster under the Establishment Clause, a practice must satisfy the *Lemon* test, pursuant to which

it must: (1) have a valid secular purpose; (2) not have the effect of advancing, endorsing, or

inhibiting religion; and (3) not foster excessive entanglement with religion. Government action

"violates the Establishment Clause if it fails to satisfy any of these prongs." *Edwards,* 482 U.S.

578 at 583; *Agostini v. Felton,* 521 U.S. 203, 218 (1997).  To refresh recollection, here is a video

that explains the *Lemon* Test in a clear manner: https://youtu.be/_hYslZWsjxA.

2.  In view of the testimony of ex-gays, medical professionals, persecuted christians, and

ministers, gay marriage policy, sexual orientation discrimination statutes, pro-transgender city

ordinances, conversion therapy bans, library endorsed drag queen story hour etc violate all three

prongs of the *Lemon* test by a landslide in their making and in their enforcement because sexual

orientation has nothing to do with American tradition or heritage or immutability, but rather, the

evidence shows that sexual orientation is a mythology, dogma, orthodoxy, and theocratic

ideological doctrine that is predicated on a series of unproven faith-based assumptions and naked

assertions and is inseparably linked to the religion of Secular Humanism.  (DE_ Lisa Boucher ¶¶

1-10; DE _ Quinlan ¶¶ 1-37; DE _ Pastor Cothran ¶¶ 1-50; DE _ Dr. King ¶¶ 1-20; DE _ Dr.

Cretella ¶¶ 1-20; DE _ Goodspeed ¶¶ 1-20; DE _Grace Harley ¶¶ 1-25; DE _Kohl ¶¶ 1-12; DE _

Pastor Cuozzo;  ¶¶ 1-21; DE _ Pastor Farr ¶¶ 1-33; DE _ Pastor Penkoski ¶¶ 1-34; DE _ Pastor

Cairns ¶¶ 1-30;; DE _Christian Resistance ¶¶ 1-21; DE _ Special Forces Of Liberty ¶¶ 1-34). See

Amicus Briefs of the Center For Garden State Families; the WW Bridal and the American

Family Association of PA; National Alliance of Black Pastors; and the Coalition of Doctors

Defending Reparative Therapy.   The United States Supreme Court has already recognized and

reaffirmed that that Secular Humanism is a religion for the purposes of the First Amendment

Establishment Clause in *Torcaso v. Watkins*, 367 U.S. 488 (1961) and *Edwards v. Aguillard*, 482

U.S. 578, 583 (1987)("Among religions in this country, which do not teach what would generally

be considered a belief in the existence of God, are Buddhism, Toaism, Ethical Culture, Secular

Humanism, and others." See Also *Washington Ethical Society v. District of Columbia*, 101 U.S.

App. D.C. 371, 249 F. 2d 127 (1957); 2 Encyclopaedia of the Social Sciences, 293; J.Archer,

Faiths Men Live By 120—138, 254—313 (2d ed. revised by Purinton 1958); Stokes & P

feffer,supra, n.3 ,at 560. *Welsh v. U.S*, 1970398 U.S. 333 (U.S. Cal. June 15);; *Wells v. City and*

*Cnty. of Denver,* 257 F.3d 1132 (2001)). Nearly all of the Federal of Appeals have also

recognized that Secular Humanism is a religion for the purposes of the First Amendment

Establishment Clause. The Louisiana State legislature intends to hammer home the fact that

Secular Humanism is a religion as the Supreme Court found long before *Obergefell* was decided

and that LGBTQ orthodoxy is insperably linked to the religion of Secular Humanism in a

manner that bars the government from respecting it.[1]

Plaintiffs Harley, Sevier, Gunter, and Kohl join Plaintiffs Penkoski and Guidry in their

the primary cause for injunctive and declaratory relief under the First Amendment Establishment

Clause.   The evidence shows that the First Amendment Establishment Clause balanced with the

Free Exercise Clause has exclusive jurisdiction over how the State is permitted to legally define

marriage.   However, Plaintiffs Harley, Sevier, Gunter, and Kohl exercise their right to plead in

the alternative under FRCP  8(e)(2), seeking to force the government to legally recognize more

progressive forms of parody marriage, to include polygamy and man-object marriage, if and only

if  marriage is a matter of civil rights that falls within the jurisdiction of the Fourteenth

Amendment Equal Protection and Substantive Due Process Clauses as the United States

Supreme Court found in *Obergefell v. Hodges,* 135 S.Ct. 2584 (2015) for reasons that were

based exclusively on emotion.

---

[1]  In *Real Alternatives,* the Seventh Circuit Court of Appeals stated: "we detect a difference in the "philosophical views" espoused by [the litigants], and the "secular moral system[s]...equivalent to religion except for non-belief in God" that Judge Easterbrook describes in *Center for Inquiry,* 758 F.3d at 873. There, the Seventh Circuit references organized groups of people who subscribe to belief systems such as Atheism, Shintoism, Janism, Buddhism, and secular humanism, all of which "are situated similarly to religions in everything except belief in a deity." *Id.* at 872. "These systems are organized, full, and provide a comprehensive code by which individuals may guide their daily activities." Instead having across or the ten commandments, the LGBTQ church has the gay pride flag and their own commandments,such as if you disagree with LGBTQ ideology you are a bigot worth marginalizing. The unproven naked truth claims evangelized by the LGBTQ church such as (1) there is a gay gene, that (2) people can be born in the wrong body, that (3) same-sex sexual activity checks out with the human design, that (4) same-sex buggery is not immoral, and that (5) people come out of the closest are baptized gay consists of a series of unproven faith based assumptions that are implicitly religious and take a huge amount of faith to believe are even plausible.

3.  All of the Plaintiffs acknowledge that if the State were to legally recognize other forms of

non-secular parody marriages, it would only further entangle the government with the religion of

Secular Humanism and further erode community standards of decency.

4.  The Plaintiffs understand and acknowledge that under the Free Exercise Clause of the United

States Constitution, Plaintiffs Harley, Sevier, Gunter, and Kohl have the same right as

self-identified homosexuals and transgenders to self-identity as anything they would like to,

cultivating their own self-asserted sex-based identity narrative that erodes community standards

of decency, if that is what they want to do. That is, the Plaintiffs acknowledge and understand

that citizens of Louisiana have the right under the Free Exercise Clause to (1) self-identify as

anything they would like, to include a homosexual, transgender, zoophile, wizard, chicken

sandwich, to (2) have wedding ceremonies, and to (3) live as married people do for better or

worse.

5.  The Plaintiffs have no objection to the Drag Queen Story hour being held on private property.

However, the Plaintiffs object to the public library's endorsement of Drag Queen Story hour

because the public library is a government actor that is endorsing non-secular activity in an

manner that is excessively entangling the government with the religion of Secular Humanism in

a manner that relegates non-observers of the religion of Secular Humanism to second class

citizens.

## B.  JURISDICTION AND VENUE

6.  This action raises questions under the Constitution of the United States and 42 U.S.C. § 1983,

and thus this Court has jurisdiction over all claims for relief pursuant 28 U.S.C. § 1331.(Federal

Question Jurisdiction).  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because all

Defendants reside in this District and in this State. Venue is also proper because a substantial

part of the events giving rise to the claims occurred in this district.  This Court has the authority

to enter a declaratory judgment and to provide preliminary and permanent injunctive relief

pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure, and 28 U.S.C. §§ 2201 and

2202.

## THE PARTIES

7.  Plaintiff Aaron Guidry is a Louisiana resident, like the other Plaintiffs. He is the Louisiana

chapter leader of Warriors For Christ and the Special Forces Of Liberty, an aggressive and

lobbying groups that the other Plaintiffs belong to. The Special Forces Of Liberty promotes

common sense policies that are not based off emotion but are based on common sense, logic, and

what the written Constitution says.  Plaintiff Guidry has been going to the Lafayette public

library since he was a child. It is a sentimental place for him that is marked by innocence.

Plaintiff Guidry is a card carrying member of the Lafayette Public Library, along with most of

the other Plaintiffs.  Plaintiff Guidry, like the other Plaintiffs is deeply offended that the

Lafayette Library is hosting the Drag Queen Story hour in an effort to indoctrinate minors to a

religious ideology that does not check out with the human design on public grounds in a facility

paid for by tax dollars.  Plaintiff Guidry, like the other Plaintiffs, believe that homosexuality is

immoral, obscene, subversive to human flourishing, and non-secular in nature.  Plaintiff Guidry,

like the other Plaintiffs does not want the State to endorse - either directly or indirectly -

anything that has to do with Secular Humanism, which includes homosexual and transgender

ethos.

8. Pastor Penkoski is the founder of Warriors For Christ. Pastor Penkoski has been viciously persecuted by the LGBTQ community because he believes that the Bible's take on sex and sexuality is objective right and that when followed it leads to maximized human flourishing. Pastor Penkoski, sought, but was not permitted  to give a rebuttal to the transgender story hour at the Lafayette public library on October 6, 2018,  and he was treated like a second class citizen because the Defendants are putting the religion of Secular Humanism over other religions, like Christianity.

9.  The Plaintiff Sevier is a former Judge Advocate General, who is the author of a litany of legislative measures. Plaintiff Sevier was in good standing with the Tennessee Supreme Court. He sued the Tennessee Board of Professional Responsibility that is part of the Tennessee Supreme Court for unethically targeting him because he is a Christian and a whistleblower. The Tennessee Supreme Court hatched a reprisal plan to shut him up by abusing the mental health profession in the same way that it was abused against filmmaker Dinesh D'Souza in *United States v. D'Souza*, 1:14-cr-00034 (S.D. N.Y. 2014), who was targeted by the Obama administration for making films that embarrassed the former President by telling the truth. Plaintiff Sevier has been mercilessly targeted by the Tennessee Board Of Professional Responsibility for purely religious and political reasons. Plaintiff Sevier will move to join the current attorney of record, if the motion is denied, Plaintiff Sevier will add members of the Board as co-defendants.[2] "Where there is a lot of free speech, there is a lot of stupid speech,"

---

[2] Plaintiff Sevier and the Special Forces Of Liberty have a vested interest in deterring state agencies, like Colorado Civil Rights Commission, ran by Aubrey Elenis, that targeted Christian baker Jack Phillips and the Wyoming Commission on Judicial Conduct and Ethics, chaired by Wendy Soto, that targeted the Honorable Judge Neely because of political and religious differences. What Krisann Hodges, Aubrey Elenis, and Wendy Soto all have in common is that they are females who are brainwashed by culture and who obsessively work to entangle the government with the religion of Secular Humanism because they lack the character fitness to know the objective difference between real and fake, right and wrong, and secular and non-secular.

accordingly, under the Free Exercise Clause, Plaintiff Sevier self-identifies as an objectophile, as is his right, just as a person can self-identify as a transgender. Plaintiff Sevier is a taxpayer, whose direct efforts impact the tax revenue of this state immensely.[3] (See Declaration of the Special Forces Of Liberty ¶¶ 1-34).  Plaintiff Sevier has been mercilessly assaulted by the LGBTQ church for demonstrating repeatedly that *Obergefell* was a dishonest sham predicated on an unprincipled ploy that lacked a primary secular purpose and has lead to a host of secondary harmful effects - see the declaration of Lisa Boucher from WW Bridal.

10.  In view of the Free Exercise Clause, Plaintiff Gunter self-identifies as a polygamists. Plaintiff Gunter is a taxpayer of this State, whose direct efforts on lobbying and writing legislation impacts the tax income of this State.[4]

11. Plaintiff Kohl was straight. She was engaged to a man. She had some traumatic experiences in dating males and elected to self-identify as a lesbian in conforming to the messages that self-identified transgenders intend to preach within the four walls of the Lafayette Public Library to minors with the Defendants support. Plaintiff Kohl legally married a woman once it was permitted, only to then end the marriage. She realized that being in a romantic relationship with a woman was worse than being married to a man. She now self-identifies as a polygamist in view

---

[3]  Objectophillia: "Object sexuality or objectophilia is a form of sexuality focused on particular inanimate objects. Those individuals with this expressed preference may feel strong feelings of attraction, love, and commitment to certain items or structures of their fixation." In step with his self-asserted sex-based identity narrative, he sought a marriage license from the Parish Clerk - having met all of the requirements - and was arbitrarily denied for procedural and other reasons that self-identified homosexuals once were.  The Plaintiffs have paid taxes in this state and those taxes have gone towards the funds that connect with supporting and recognizing other forms of parody marriage.

[4] Plaintiff Gunter wants to marry multiple wives in this State with the state's endorsement of his worldview. He wants to add Plaintiff Kohl and Plaintiff Grace as his spouses. Plaintiff Gunter - having met all of the requirements to marry - sought a marriage license from the Clerk and was denied because he is part of the true minority of the sexual orientation suspect class. (See Declaration of Gunter).  As a lobbyist and member of the Special Forces Of Liberty, he is working in this State to pass legislation that will impact the States general fund. He is a taxpayer of this state. (See Declaration of Special Forces Of Liberty ¶¶ 1-34).

of the Free Exercise Clause. She wants to legally marry Plaintiffs Gunter and Grace Harley in

Louisiana if and only if self-identified homosexuals marriages are legally recognizable. (See

Declaration of Kohl). She is part of the Special Forces Of Liberty who is pushing legislation in

this State that substantially impacts the State's general fund annually.

12. Plaintiff Grace was born as a African American woman but self-identified as a transgender

man for 18 years. She went from "Joan the woman" to "Joe the man." At one point, she really

believed that she was born in the wrong body. She accepted that idea on faith having been

indoctrinated by the same ideological dogma that the Lafayette Library has endorsed by hosting

the Drag Queen Story hour. In 1992, Plaintiff Harley left the transgender identity narrative

behind completely, having been radically transformed by the same Christ figure that Jack

Phillips treats as his King. In view of the Free Exercise Clause, Plaintiff Harley now

self-identifies as a polygamist. She has been persecuted relentlessly by intolerant believers in the

homosexual ideological religion because her testimony is fatal to the idea that "gay rights" are

"civil rights" based on immutability (See Declaration of Grace Harley).     As an African

American female who experience racial discrimination as a child growing up in the deep south,

Plaintiff Harley is deeply offended that the State would treat the LGBTQ plight as if it were

equal to the race-based civil rights plight, whereas only the race-based civil rights plight was

based on immutability and genetics.

13. Defendant Teresa Eleberson is the director of the Lafayette public library. Having been

brainwashed by the narrow minded unexamined assumption of the superiority of our cultural

moment, Defendant Eleberson objectively cannot tell the difference between right and wrong,

real and fake, and secular and non-secular. Defendant Eleberson, like the other Defendants, is a

state actor who is misusing her position in government to excessively entangle the government with the religion of Secular Humanism.

14.  Defendant John Bell Edwards is the Governor of the State of Louisiana ("Governor").  In his official capacity, the Governor is the chief executive officer of the State of Louisiana. It is his responsibility to ensure that the laws of the State are properly enforced and that the government is not engaging in policy that violates the United States Constitution. The Governor is overseeing laws that provide self-identified homosexuals with a constellation of taxpayer funded benefits in a manner that excessively entangles the government with the largest denomination within the church of Secular Humanism, puting the religion of Secular Humanism over non-religion.

15.  Defendant  Jeffrey Martin Landry is the Attorney General of the State of Louisiana ("Attorney General").  In his official capacity, the Attorney General is the chief legal officer of the State of Louisiana.  It is the Attorney General's duty to see that the laws of the State are uniformly and adequately enforced. The Attorney General is enforcing laws that provide benefits to individuals who self-identify as homosexual but not to individuals who self-identify as polygamists and objectophiles who are more progressive. The Attorney General's office is giving special treatment to individuals who self-identify as homosexual but not those who have a less popular sex-based self-asserted identity narrative for reasons that are arbitrary - demonstrating that pro-gay policies are non-secular shams.  The is the Attorney General is overseeing the distribution of a constellation of benefits to self-identified homosexuals which flow from the coffers of the State's general fund in a manner that that is causing the Plaintiffs to be complicit in endorsing a worldview and sexual practices that they believe are self-evidently immoral, that are potentially removed from reality, and that have a tendency to erode community

standards of decency. By filing this lawsuit, the Plaintiffs are doing the Attorney General's job

for him due to the Attorney General's refusal to understand the First Amendment Establishment

Clause and the Free Exercise Clause of the First Amendment and his duty under Article VI to

uphold the United States Constitution.

16. Defendant Hon. Stuart R. Shaw is the Marriage Supervisor and "the Clerk" of the Red River

Parish. The Clerk is responsible for maintaining vital records of marriages, issuing marriage

licenses, and performing civil marriage ceremonies. Defendant Shaw issues marriage licenses to

individuals who self-identify as homosexual, but he refuses to give marriage licenses to

zoophiles, objectophiles, and polygamists license on a basis that can only be described is

arbitrary. The Red River Parish Clerk's office has attempted to refuse to issue marriage licenses

to self-identified homosexuals because the Clerk believed that doing so was immoral. However,

now the Plaintiffs have served the Red River Parish Clerk's office with the controlling

Constitutional basis for why the Clerk must never issue parody marriage licenses - it is an evil

that the Establishment Clause simply will not allow. By issuing marriage licenses to individuals

who seek to enter into a parody marriage, the Parish is excessively entangling the government

with the religion of Secular Humanism.

17. Defendant Joel Robideaux is the Mayor of Lafayette Louisiana. The Lafayette policy

implementation falls under his jurisdiction as the chief executive of the city. The evidence shows

that Honorable Mayor has been looking for a legal basis to stop the Drag Queen Story hour from

taking place under his watch. The Plaintiffs are providing the Honorable May with the legal

bases for doing so for two independent reasons. First, the Mayor has a duty under Article VI of

the United States Constitution to ensure that the city library does not engage in policies that

violate the United States Constitution. The United States Constitution preempts state law and

policy. The Libery is a state actor.  The Honorable Mayor has a duty under Article VI to shut

down the transgender story hour that is scheduled for October 6, 2018 because it is non-secular

activity that violates prong I of the Lemon Test and because it has the effect of excessively

entangling the government with the religion of Secular Humanism in violation of prong II.

Accordingly, the Honorable Mayor is Constitutionally required  by the Establishment Clause, as

a matter of duty,  to stop the Transgender story hour from going forward for the same reasons

that the remaining Defendants and this Honorable Court are required to get out of the parody

marriage business and to disentangle the government from the LGBTQ community. The fact that

the Library picked out the books to be read at the transgender story hour and the fact that United

States Supreme Court has been especially vigilant from not allowing state assets to be used to

indoctrinate minors to a particular religious worldview makes it mandatory for the Mayor to stop

the Lafayette Public Library from converting into a cathedral that is crafted to introdrination

minors to the dehumanizing theocratic dogma of Secular Humanism.  Furthermore, the Plaintiffs

are providing the Honorable Mayor with a second insurmountably legal basis to enjoin the Drag

Queen Story hour from taking place at the public facility that would survive first amendment

heightened scrutiny if challenged. The self-identified transgenders intend to engage in activity

that erodes community standards of decency.  (A Christian Bible Study held by Pastor Penkoski

or Plaintiff Guidry does not erode community standards decency - and that is a distinction with a

difference).   The city has a compelling interest to uphold community standards of decency.

*Paris Adult Theatre I v. Slaton*, 413 US 49, at 63, 69 (1973).  It remains true now as it has always

that "any school boy knows that  a homosexual act is immoral, indecent, lewd, and obscene.

Adult persons are even more conscious that this is true." *Schlegel v. United States*, 416 F. 2d

1372, 1378 (Ct. Cl.1969). The United States Supreme Court has made crystal clear long before

the *Obergefell* and *Windsor* putsch "to simply adjust the definition of obscenity to social realities

has always failed to be persuasive beforethe Courts of the United States." *Ginsberg v. New York*,

390 U.S. 629, 639–40, 88 S. Ct. 1274, 20 L. Ed. 2d 195 (1968); *Mishkin v. State of New York*,

383 U.S. 502, 509, 86 S. Ct. 958, 16 L. Ed. 2d 56 (1966); and *Bookcase, Inc. v. Broderick*, 18

N.Y.2d 71, 271 N.Y.S.2d 947, 951, 218 N.E.2d 668, 671 (1966). The Mayor has a compelling

interest to shut down the Drag Queen Story Hour because its endorsement by the public library

erodes community standards of decency and normalizes false permission giving beliefs about sex

that do not check out with the human design and the way things are as a matter of self-evident

fact-based observation.  The Honorable Mayor has a duty to shut down the Drag Queen Story

hour from going forward for the same reason he would need to shut down "Strip Club Story

Hour hosted by Anastasia," "Objectophile Story Hour hosted by Lieutenant Sevier" or

"Polygamy Story Hour" for minors hosted by SGM Gunter.  In view of these two different

reasons, if the mayor does not shut down the Drag Queen Story Hour the Special Forces of

Liberty will file additional lawsuits against the Mayor's office for dereliction of duty.

18.  Defendants, and those subject to their supervision, direction, and control, are responsible for

the enforcement of marriage policies, pro-transgender policies, and the enforcement of sexual

orientation discrimination statutes that assert that gay rights are civil rights, and other laws and

policies that have caused the Plaintiffs and others to be injured in their taxpayer status and

socially marginalized for believing in a different worldview other than mainstream Secular

Humanism that is advocated by the Democratic Party ad nauseum, as a result of their animus

towards Constitutional supremacy and absolute transcultural truth that has been woven into the fabric of the universe. The relief requested in this action is sought against each Defendant, as well as against each Defendant's officers, employees, and agents, and against all persons acting in cooperation with Defendant(s), under their supervision, at their direction, or under their control. Each of the Defendants has a duty to uphold the United States Constitution under Article VI have failed to do so.

## UNDISPUTED MATERIAL FACTS

19.  The Plaintiffs repeat and incorporate by reference all of the above allegations of this Complaint as though fully set forth herein. The Plaintiffs have no objection to the Drag Queen Story Hour taking place at Delta Lambda Phi or at any other private location. The Defendants recognize, respect, and defend the right for individuals to self-identify as anything they would like, even if the identity narrative is self-evidently depersonalizing, dehumanizing, damaging, destructive, desensitizing, and dangerous. The Plaintiffs believe that the members of Delta Lambda Phi have the right to self-identify as transgender in the same way that they have the right to self-identify as sexualized chicken sandwiches. Defendant Eleberson knows or should know that the whole purpose for having the Drag Queen Story Hour at the public library is to convey that government has established Secular Humanism as the supreme state religion through symbolic endorsement.

20.  Having all been viciously persecuted and hunted by the deeply intolerant and truth allergic LGBTQ community, the Plaintiffs are deeply offended that the tax fund library is hosting the Drag Queen Story Hour at a publicly funded facility. The Plaintiffs use the library for secular purposes and the Drag Queen Story Hour causes the Plaintiffs to feel like second class citizens,

since they do not believe in the narrow minded and exclusive religion of Secular Humanism,

expressive individualism, also referred to as postmodern western individualistic moral relativism,

as advocated by the LGBTQ church.  The purpose of the Library hosting the Drag Queen Story

Hour is to relegate citizens who have the common sense and humility to believe in absolute truth

to second class citizens - communicating that the State of Louisiana believes that their worldview

is inferior to the idea that there is more than two genders or that people can be born in the wrong

body - which are nothing more than unproven faith based assumptions and naked assertions that

are themselves implicitly religious.

21.  The Plaintiffs use the public library for secular purposes. They have worked on legislative

within the library to include legislative measures like the (1) Admission Act, (2) the Human

Trafficking And Child Exploitation Prevention Act, (3) the Stop Social Media Censorship Act,

(4) the Life Appropriation Act, (5) the Elevated Marriage Act (referred to as the Covenant

Marriage Act by Arkansas), (6) the resolution that resolves that Secular Humanism is a religion

for the purposes of the First Amendment Establishment Clause and (7) the Marriage And

Constitution Restoration Act and concurrent resolution. See also the resolution that declares that

pornography online is creating a public health crisis.  The Plaintiffs had made plans to bring their

kids or other minors to the library on October 6, 2018, and they do not want themselves or

minors who are under their care to be exposed to the sermonizing by self-identified transgenders

who intend to indoctrinate minors to their religious faith-based ideology that is potentially

implausible and is without question obscene and non-secular.  The Plaintiffs object to the public

library being converted into a temple for religious indoctrination of minors to a wordview on sex

that was basically illegal until recently, when *Lawrence v. Texas*, 539 U.S. at 579 overturned

*Bowers v. Hardwick*, 478 U. S. 186 (1986).

22.  Having been viciously targeted and abused by phony tolerant and intellectually dishonest

Secular Humanism, the Plaintiffs know first hand that transgender ideology plunges individuals

into a further state of intellectual dishonesty and desensitization which makes them even more

self-entitled and dangerous to citizens who believe in absolute truth. The Plaintiffs are deeply

offended that government actors would symbolically and directly endorse such flagrant

non-secular conduct that prides itself on eroding community standards of decency and seeks to

hijack the race-based civil rights movement in manner that manages to be racially and sexually

exploitative.  Because Defendant Eleberson is hosting the Drag Queen Story Hour she can only

be described as a racists who has animus towards Christians or she is a person who cannot think

logically, either way, her decision to host the Drag Queen Story Hour and to pick out the books

for the meeting offends the Plaintiffs.

23.  Many of the Plaintiffs have library cards from the Lafayette Public library.  Plaintiff Guidry

has been going to Lafayette library off and on since he was a child.  The Plaintiffs made plans to

be in the library on October 6, 2018 during the Drag Queen Story Hour to discuss the Marriage

And Constitution Restoration Act and the Secular Humanism Resolution, and how they plan to

force all 50 states and the Federal government to completely disentangle itself with the LGBTQ

ideology, since that is what the Establishment Clause requires. The Plaintiffs plan to discuss their

proposed legislative findings and the different takes by various Attorney Generals throughout the

United States who have pledged to defend the proposed legislation and abandon *Obergefell* as

Article VI requires.  The Plaintiffs purpose in using the library on October 6, 2018 is secular in nature.

24. Agents from the Library selected the books for the Drag Queen Story hour.  They welcomed and encouraged the story hour to take place and have engaged in a series of other measures to make it clear that the Library itself was officially endorsing the drag queen story hour on behalf of the state of Louisiana, and giving preferential treatment to the religion of Secular Humanism over non-religion. The Plaintiffs believe that emotional reasons do not allow the government to usurp the Establishment Clause.

25. Just because Secular Humanists are too intellectually dishonest and blind to see that their take on faith, sex, gender, morality, marriage, and truth is religious in nature does not mean that it is not. The Plaintiffs believe that it is not necessarily true that "times can blind," as Chief Justice Roberts said in his *Obergefell* dissent, it is that a subscription to moral relativism that "blinds." The Plaintiffs object to the government endorsing a religious worldview that plunges citizens into intellectual darkness. After all, without truth, there is no freedom. Freedom comes from the truth. LGBTQ ideoloty and transgender orthodoxy distorts and mutalates the truth in a manner that is self-identity immoral, obscene, and subversive to human flourishing.

26.  In September  2018, Plaintiff Guidry and other Plaintiffs asked the library administration if they could conduct a Bible Study while the Drag Queen Story hour was taking place or at any other time. The Library rejected their request because the Library's goal is to endorse Secular Humanism in a manner to show that it is the official religion of the State.  The Library is not a proponent of diversity or free speech. It is an advocate for a narrow version of religious moral relativism.

27. Pastor Penkoski asked the Lafayette Library if he could be given an opportunity to conduct a

rebuttal session immediately following the Drag Queen Story Hour,  where he would call into

question the plausibility of the transgender ideology and question the fundamental precepts of

Secular Humanism. The Library denied Pastor Penkoski's request because its employees believe

that they are entitled to usurp the Establishment Clause because they do not know the objective

difference between real and fake, right and wrong, and secular and non-secular.


28.  Just as self-identified transgenders have the right to self-identify as transgender under the

Free Exercise Clause, Plaintiff Sevier has the right to self-identify as a objectophiles. Plaintiff

Sevier does self-identify as an objectophile, who married a radiant object in New Mexico with

female like features.

29.  Plaintiff Sevier, a former rule of law command Judge Advocate General, contacted the

Lafayette Library and asked if he could conduct the  "objectophile story hour" to a group of

children. Minors such as Nila Frederiksen, the poster child of abusing the me too movement.

https://www.facebook.com/nilafaith. (Nila Frederiksen is expected to step forward at any

moment to accuse Supreme Court Justice nominee Justice Kavanaugh of sexually harassing her

as well #me too).   Plaintiff Sevier offered to allow Defendant Elberson herself to hand select

the books for the "objectophile story hour" since she self-identifies as a person of tolerance and

diversity so that the Library can further perfume the facility with its wisdom, manifesting a more

logically consistent endorsement of the Secular Humanism that would actually accord with

concepts of equal treatment by state actors.  The Library denied Plaintiff Sevier's request and

was incredibly hostile towards him because the Library is not really an advocate for tolerance,

diversity, and unity. The Library is exclusively interested in endorsing the most popular version

of Secular Humanism as advocated by the LGBTQ church and the DNC ad nauseum because the

employees of the Library have permitted themselves to become brainwashed by a shallow

faith-based system that is immensely irrational.

30.  Plaintiff Sevier approached the Red River Parish and asked that the Parish either legally

recognize his out-of-state marriage or that the Parish issue him a new marriage license. The

Parish denied his request for arbitrary reasons.

31.  Throughout Louisiana, the Parishes are issuing marriage licenses to self-identified

homosexuals based on their sexual orientation or self-asserted sex-based identity narratives.  The

Governor and State officials are providing full marriage benefits and privileges to legally

married self-identified homosexuals but not to self-identified polygamists and objectophiles for

procedural and moral reason based on state law, not Federal Constitutional law. The distribution

of the a constellation of benefits to marriage self-identified homosexuals by the implementation

and enforcement of policies that the Governor and Attorney General oversee is a use of taxpayer

dollars that the Plaintiffs object to. The Plaintiffs have been brutalized, targeted, threatened,

libeled, stalked, in some cases assaulted, and victimized by the LGBTQ community for

recognizing that LGBTQ ideology is removed from reality, obscene, immoral, non-secular, and

nothing more than a pathetic attempt to misuse government in an attempt to explain away the

natural feelings of shame and inadequacy that comes from engaging sexual immoral conduct that

is as self-evidently evil as rape by trick.  The government is not a church. It is not a redeemer.

32.  The Plaintiffs are members of the Special Forces of Liberty. The Special Forces Of Liberty

are working on a series of legislative proposals with the State House and Senate that will have

monumental impact on the annual income of the state. As individuals who pay taxes in this State and who use the public library, the Plaintiffs have a special concerns as to how the State appropriates tax dollars. See DE __ Special Forces Of Liberty ¶¶ 1-34. See the Life Appropriation Act (a bill that defunds facilities that are providing convenience abortions because such abortions are non-secular and because such appropriations have the effect of excessively entangling the government with a religion.

33. There are medical experts, some of whom have testified under oath in this case, that, just as there is no evidence that a "rape gene" exists there is no evidence that a "gay gene" exists either and that sexual orientation does not have anything to do with immutability. (DE ___ Dr. King ¶¶ 1-20; DE __Dr. Cretella ¶¶ 1-20; see the *Amicus* Briefs of the Coalition Of Doctors Defending Reparative Therapy and the Center For Garden State Families). In fact, these medical experts have attested that it is deeply dishonest for anyone to pretend that there is such thing as a gay gene or the homosexuality has anything to do with immutability whatsoever.

34. There are former gay activists, some of whom have testified under oath in this case, who at one point sincerely self-identified as homosexual and indoctrinated themselves with the LGBTQ ideology, only to completely leave the lifestyle behind, converting to a totally different sex-based identity narrative. These former self-identified homosexuals, some of whom have appeared under oath in this case, have attested that homosexuality is inseparably linked to religion of Secular Humanism. (DE _ Quinlan ¶¶ 1-37; DE _ Pastor Cothran ¶¶ 1-50; DE _ Dr. King ¶¶ 1-20; D; DE _ Goodspeed ¶¶ 1-20; DE _ Grace Harley ¶¶ 1-25; DE 9 Kohl ¶¶ 1-12). See *Amicus* Briefs of the Center For Garden State Families; American Family Association of PA; National Alliance of Black Pastors; the Coalition of Doctors Defending Reparative Therapy. They have

also attested to how depraved, intolerant, immoral, dehumanizing, and dishonest homosexual

orthodoxy is. These former gay activists were radically transformed by the personalized truth of

the new testament gospel.

35. Many licensed ministers, some of whom have testified under oath in this case, who are

experts in religion, have attested that homosexuality, sexual orientation ideology, transgender

ethos, and parody marriages, to include gay marriage, are inseparably linked to the religion of

Secular Humanism. DE 24 Pastor Cuozzo; ¶ ¶ 1-21; DE 17 Pastor Farr ¶¶ 1-33; DE 8 Pastor

Penkoski ¶¶ 1-34; DE 25 Pastor Cairns ¶¶ 1-30; See Amicus Briefs of the National Alliance of

Black Pastors. These pastors have testify under oath that when a person says that they were born

in the wrong body, that there are more than two genders, that people can be born gay, that people

can come out of an invisible closet and be baptized gay, and that to disagree with the LGBTQ

community makes a person a bigot amounts to a series of unproven faith-based assumptions and

naked assertions that are implicitly religious and predicated on emotional non-sense that the

cannot be used as a basis to usurp the First Amendment Establishment Clause.

36. The Supreme Court has already recognized that non-institutionalized religions are regulated

by the Establishment Clause in *Torcaso v. Watkins*, 367 U.S. 488 (1961) and *Edwards v.

Aguillard*, 482 U.S. 578 (1987) stating that "among religions in this country, which do not teach

what would generally be considered a belief in the existence of God, are Buddhism, Toaism,

Ethical Culture, Secular Humanism, and others."[5] A majority of the Federal Courts of appeals

have also recognized that Secular Humanism is a religion for purposes of the First Amendment

Establishment Clause. Because LGBTQ orthoxody, like abortion ideology, is inseparably linked

---

[5] See also Washington Ethical Society v. District of Columbia, 101 U.S. App. D.C. 371, 249 F.2d 127 (1957); 2
Encyclopaedia of the Social Sciences, 293; J. Archer, Faiths Men Live By 120—138, 254—313 (2d ed. revised by
Purinton 1958); Stokes & Pfeffer, supra, n. 3, at 560. Welsh v. U.S, 1970398 U.S. 333 (U.S. Cal. June 15)

to the religion of Secular Humanism, it means that the Defendants are bound by First

Amendment Establishment Clause pursuant to Article VI through the Fourteenth Amendment to

stop enforcing any policy that directly or symbolically respects LGBTQ orthoxody.

37.  The LGBTQ community is "organized, full, and provide[s] a comprehensive code by which

individuals may guide their daily activities." [6] Delta Lambda Phi is not a secular organization. It

is faith-based church has set out on a great commission to convert minors to its belief system that

denies common sense. Delta Lambda Phi can hold the Drag Queen Story hour on private

property and it engages in its destructive efforts to evangelize minors in a manner that is

sexually, emotionally, intellectually, and racially exploitative.

38.  Plaintiff Sevier, as a self-identified objectophile, moved to intervene in many same-sex

marriage actions under Fed. R. Civ. P. 24 as a member of the true minority of sexual orientation.[7]

Every time Plaintiff Sevier moved to intervene, the homosexual litigants opposed his

intervention.  In *Brenner*, Judge Hinkle found that the legal basis for man-object marriage

---

[6] In *Real Alternatives, Inc. v. Burwell*, 150 F. Supp. 3d 419, 440–41 (M.D. Pa. 2015), aff'd sub nom. *Real Alternatives, Inc. v. Sec'y Dep't of Health & Human Servs.*, No. 16-1275, 2017 WL 3324690 (3d Cir. Aug. 4, 2017), the court stated: "we detect a difference in the "philosophical views" espoused by [the plaintiffs], and the "secular moral system[s]...equivalent to religion except for non-belief in God" that Judge Easterbrook describes in *Center for Inquiry*, 758 F.3d at 873. There, the Seventh Circuit references organized groups of people who subscribe to belief systems such as Atheism, Shintoism, Janism, Buddhism, and secular humanism, all of which "are situated similarly to religions in everything except belief in a deity." *Id.* at 872. These systems are organized, full, and provide a comprehensive code by which individuals may guide their daily activities. Instead of having a cross or the ten commandments, the LGBTQ church has the gay pride flag and their own commandments, such as if you disagree with LGBTQ ideology you are a bigot worth marginalizing. The unproven naked truth claims evangelized by the LGBTQ church such as (1) there is a gay gene, that (2) people can be born in the wrong body, that (3) same-sex sexual activity checks out with the human design, that (4) same-sex buggery is not immoral, and that (5) people come out of the closet baptized gay consists of a series of unproven faith based assumptions that are hyper religious and take a huge amount of faith to believe are even real, since these truth claims buck common sense and are more likely than not shallow qualifiers hoping to justify immoral sexual conduct that is indecent, immoral, and questionably legal.
[7] *Bradacs v. Haley*, 58 F.Supp.3d 514 (2014);; *Brenner v. Scott*, 2014 WL 1652418 (2014);; *General Synod of The United Church of Christ v. Cooper*, 3:14cv213 (WD. NC 2014);; *Kitchen v. Herbert*, 755 F. 3d 1193, 1223 (CA10 2014);;;; *Bostic v. Schaefer*, 760 F.3d 352 (4th Cir. 2014);; *Majors v. Horne*, 14 F. Supp. 3d 1313 (Ariz. 2014);;;; *Deleon v. Abbott*, 791 F3d 619 (5th Cir 2015);; *Tanco v. Haslam*, 7 F. Supp. 3d 759 (MD Tenn. 2014);; *Bourke v. Beshear*, 996 F. Supp. 2d 542 (WD Ky. 2014);; and *Obergefell v. Hodges*, 135 S.Ct. 2584 (2015)

"removed from reality." (See Exhibits).  The Plaintiffs agree with Judge Hinkle that all
self-asserted sex-based identity narratives that are questionable real, moral, and decent are all
non-secular in nature and have the potential to be "removed from reality," which makes them
non-secular.

39.  Man-man, woman-woman, man-object, man-animal, and man-multi-person marriage are all
equally not part of American heritage and tradition (See the *Amicus* Brief by WW Bridal and the
American Family Association - discourse on the "historic," "consent," and "total-equality"
norm).

40.  States have a compelling interest in upholding community standards of decency.[8] According
to the Supreme Court, to simply adjust the definition of obscenity to social realities has always
failed to be persuasive before the Courts of the United States.[9]   Many Courts have held positions
such as: "any school boy knows that  a homosexual act is immoral, indecent, lewd, and obscene.
Adult persons are even more conscious that this is true." *Schlegel v. United States*, 416 F. 2d
1372, 1378 (Ct. Cl. 1969). The Defendants know that by enforcing, recognizing, favoring, and
endorsing gay marriage policies, sexual orientation discrimination statutes, and policies that treat
transgenderism as if it was plausible that they are eroding community standards of decency and
desensitizing our citizens in a manner that is depersonalizing, out of sync with common sense,
and subversive to human flourishing. At some point, it is going to have to start registering with
"progressives" that to "progress" towards savagery is not "progress," it is stupid.  The Plaintiffs
do recognize the right for anyone to self-identify as anything they want to under the Free

---

[8]  See *Paris Adult Theatre I v. Slaton*,  413 U.S. 49, at 63, 69 (1973) see the State's Constitution.
[9]*Ginsberg v. New York*,  390 U.S. 629, 639–40, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968), *Mishkin v. State of New York*,
383 U.S. 502, 509, 86 S. Ct. 958, 16 L. Ed. 2d 56 (1966), and *Bookcase, Inc. v. Broderick*, 18 N.Y.2d 71, 271
N.Y.S.2d 947, 951, 218 N.E.2d 668, 671 (1966).

Exercise Clause, and they do agree with former Prime Minister Winston Churchill's position that "where there is a lot of free speech, there is a lot of stupid speech."

41. Two years after *Obergefell v. Hodges*, 135 S. Ct. 2584 (2015) and there has not been the "land rush" in gay marriage that was promised. The raw numbers tell the tale. Prior to the *Obergefell* decision two years ago, the 7.9 percent of gays who were married would have amounted to 154,000 married gay couples. Two years later, this had grown to 10.2 percent or 198,000 married couples.[10] Gay marriage is fake marriage, and the persecution of Christians and the attempts to indoctrinate minors to Secular Humanism through government endorsement is real, making all pro-gay and pro-transgender policies non-secular shams for purposes of the Establishment Clause.

42. Following the *Obergefell v. Hodges*, 135 S. Ct. 2584 (2015) egotistic judicial putsch, Christians throughout the United States have been socially ostracized and hauled into court for not supporting gay marriage - see public record.  Ex-gays have been targeted by the LGBTQ community.[11]  These Christians believe that to support sexual immorality is itself an act of immorality and they do not want their taxpayer dollars going towards the government's entanglement with the religion of Secular Humanism. The Plaintiffs are included in that

---

[10] See this article under FRCP 10
http://www.washingtonexaminer.com/two-years-after-obergefell-no-land-rush-on-gay-marriage/article/2629142
[11] (DE _ Lisa Boucher ¶¶ 1-10;  DE _ Quinlan ¶¶ 1-37; DE _ Pastor Cothran ¶¶ 1-50; DE _ Dr. King ¶¶ 1-20; DE _ Dr. Cretella ¶¶ 1-20; DE _ Goodspeed ¶¶ 1-20; DE _Grace Harley ¶¶ 1-25; DE _Kohl ¶¶ 1-12; DE _ Pastor Cuozzo; ¶¶ 1-21; DE _ Pastor Farr ¶¶ 1-33; DE _ Pastor Penkoski ¶¶ 1-34; DE _ Pastor Cairns ¶¶ 1-30;; DE _Christian Resistance ¶¶ 1-21; DE _ Special Forces Of Liberty ¶¶ 1-34). See Amicus Briefs of the Center For Garden State Families; the WW Bridal and the American Family Association of PA; National Alliance of Black Pastors; and the Coalition of Doctors Defending Reparative Therapy;; *Moore v. Judicial Inquiry Commission of the State of Alabama*,, 2016200 F. Supp. 3d 1328 (M.D. Ala. 2004);; *Patterson v. Indiana Newspapers, Inc.* , 2009589 F. 3d 357 (C.A.7 Ind.December 08);; *Gadling-Cole v. West Chester University*, 2012868 F.Supp.2d 390 (E.D. Pa.March 30).

persecution.  For many, to include the Plaintiffs, no amount of government coercion will change

to convert to the Secular Humanism religion as advocated by the LGBTQ church.[12]

44.  In the Wake of the *Obergefell v. Hodges,* 135 S.Ct. 2584 (2015) and *United States v.*

*Windsor,* 133 S. Ct. 2675, 186 L. Ed. 2d 808 (2013), (1) fire Chiefs have been fired;[13] (2)

Judges, like Ruth Neely of Wyoming, and lawyers, like Plaintiff Sevier,  have been subjected to

persecution by the ethics commissions or suspended because of religious and political

worldviews differ from the braindead/jaded Secular Humanists who work at the ethics

commissions;[14] (3) County Clerks have been thrown in jail and subjected to merciless civil

litigation;[15] (4) Christian Florists have been sued for providing artistic services in support of gay

marriage ceremonies;[16]  (5) Christian Bakers have been sued for refusing to use their artistic

talents to design wedding cakes for gay marriage ceremonies;[17] (6) Law Professors have been

harassed, bullied, and threatened for believing that gay marriage is immoral and unconstitutional;

[18]  (7) Ex-gay conventions have been disrupted by people who will not tolerant the idea that

homosexuality is not immutable due to a spectacular state of denial;[19] (8) Christian ranchers have

been sued in civil court for refusing to host gay weddings on their farms.[20]  From every angle,

the government's entanglement with the religion of Secular Humanism as advocated by the

LGBTQ church has been a total and complete disaster. Justice Kennedy knows it and it is why he

stepped down in the wake of the Masterpiece Cakeshop decision. *Masterpiece Cakeshop v. the*

---

[12] *Id.*
[13] http://www.nationalreview.com/corner/428779/federal-court-keeps-atlanta-fire-chiefs-case-alive
[14] http://www.cnn.com/2016/09/30/politics/alabama-chief-justice-suspended/index.html
[15] www.npr.org/sections/thetwo-way/2017/05/03/526615385/gay-couples-lawsuit-against-kentucky-clerk-is-back-on-after-appeals-court-ruling
[16] http://www.theblaze.com/news/2017/02/17/christian-florist-who-refused-to-make-gay-wedding-arrangements-to-take-case-to-u-s-supreme-court/
[17] https://www.nytimes.com/2017/06/26/us/politics/supreme-court-wedding-cake-gay-couple-masterpiece-cakeshop.html
[18] http://www.vanderbiltpoliticalreview.com/the-carol-swain-petition-hurts-the-cause-more-than-it-helps-but-theres-a-better-way/
[19] https://www.lifesitenews.com/blogs/if-gays-are-so-tolerant-why-are-they-disrupting-an-ex-gay-conference
[20] http://www.theblaze.com/news/2014/08/21/judge-fines-christian-farm-owners-13000-for-refusing-to-host-gay-wedding/

*Colorado Civil Rights Commission*, 584 U. S. _____ (2018).  The Constitution requires that all 50 states completely disentangle themselves with LGBTQ ideology. The government is not a church. It is not a redeemer. The Government cannot be used by jaded Secular Humanists in a pathetic effort to explain away the natural feelings of shame and inadequacy that follows from putting Secular Humanist principles into practice.

45.  Following *Obergefell v. Hodges,* 135 S. Ct. 2584 (2015), the LGBTQ community has been entering public schools and taking over other public spaces to advocate its ideology on sex, gender, faith, marriage, and morality with the goal of establishing Secular Humanism as the Supreme National religion and to plunge the unwary into a deeper state of intellectual darkness in the hopes of explaining away the natural feelings of shame and inadequacy that come from putting Secular Humanist ideals into practice. (DE _ Pastor Penkoski ¶¶ 1-34).[21]

46. To say that "there are no absolutes" is an "absolute." Without "faith," there is no basis for "morality," and without "morality," there is no basis for "law."(See DE _ Pastor Cuozzo;  ¶¶ 1-21; DE _ Pastor Farr ¶¶ 1-33; DE_Pastor Penkoski ¶¶ 1-34; DE _Pastor Cairns ¶¶ 1-30). There is no way to get around that axiom.

47. The transgender teen suicide rate is higher than the national average.  By hosting the Drag Queen Story Hour, the Library is hoping to impose an ideology on minors that often leads to suicide and self-mutilation because transgender ideology is pride based ideology that fails to check out with the way things are and the way we were designed as humans. While self-identified transgenders are not second class citizens, their worldview does tend to produce a

---

[21] "State issued gay married licenses" has amounted to a "license" for the LGBTQ church to infiltrate elementary schools with the purpose of indoctrinating minors to their worldview on sex that was illegal until recently. *Lawrence v.  Texas*, 539 U.S. at 579 overturned *Bowers v. Hardwick*, 478 U.S. 186 (1986).

second class life that is dehumanizing, desensitizing, depersonalizing, dangerous, and destructive.

48.  Because the government has elected to respect gay marriage and to enforce sexual orientation statutes, the Plaintiffs have been subjected to an incredibly amount of coercion by Secular Humanists, the LGBTQ Church, and government actors. (see the DE _Grace Harley ¶¶ 1-25  and the DE _ Special Forces Of Liberty ¶¶ 1-34).[22]

49. When people say that "love is love" what they really mean is that they are perfectly ok with government assets being used to crush anyone who believes that homosexuality and transgenderism are immoral or subversive to human flourishing. Such a position is categorically "unloving." It is more accurate to say that "love without truth is shallow sentimentality." One thing that the fake gay civil rights movement has managed to prove is that people who are "intolerant" of "intolerant people" are "intolerant;" people who are "judgmental" against

---

[22] Plaintiff Sevier filed a lawsuit against Congressman Alan Lowenthal, Susan Davis, Donald S. Beyer, and Earl Blumenauer,  See *Sevier v. Lowenthal*, 17-cv-0570 (D.C. 2017). Gunter, Kohl, and Grace Harley have moved to intervene as Plaintiffs in that action.  In response to the lawsuit Congressman Lowenthal took to the media and falsely stated: "I fly the Pride Flag outside my office in support of every LGBTQ individual—those in my district, those in our nation, and those around the world," Congressman Lowenthal said. "It is a symbol of both how far we have come on equality for all Americans and, as these incidents illustrate, how far we still have to go. It is a symbol of love, of peace, and diversity. I will fight this hateful attempt to silence equality and justice. We have come too far to allow the voices of bigotry and hate to win."   Congressman Lowenthal called the Plaintiffs "the voices of bigotry and hatred" in response to the demand that he follow the Constitution. Congresswoman Susan Davis took to the media and maliciously published: As the proud representative of the heart of LGBTQ San Diego, the rainbow flag in front of my DC office is a source of pride for me and my constituents," she explained. "It is a symbol of our commitment to full equality.  It is especially offensive to see this type of hateful behaviour right after our city celebrated Pride with a record high turnout," she added. "It's disheartening that in this day and age this is still an issue. Be assured that hateful lawsuits are not going to stop me from celebrating our nation's diversity. If anything, this lawsuit is a reminder of the need for us to work even harder for full equality for all Americans.Congresswoman Susan Davis and Congressman Lowenthal's statements were "of and concerning" Plaintiff Sevier. The statements were shallow, inept, hateful, dishonest, and maliciously published.  The Congressmen used their offices to publish statements that were designed to cause people to avoid and shun him and put him in a disfavorable light and this did occur.  Congressmen violated the Congressional Code of Conduct. The gay pride rainbow colored flag is a the primary symbol for the LGBTQ ideology that is based on a series of unproven faith based assumptions and naked assertions that are implicitly religious. Link provided under FRCP 10
http://www.joemygod.com/2017/07/20/man-sued-marry-laptop-sues-us-house-democrats-pride-flags-outside-offices /.

"judgmental people" are "judgmental;" people who are "dogmatic" about not being "dogmatic"
are themselves "dogmatic." As Justice Kennedy stated in *Masterpiece Cakeshop*, "tolerance has
to cut both ways."

50. Anyone, like the Defendants, who compares the "gay civil rights plight" to the "race-based
civil rights plight," whereas the race-based civil rights plight was actually based on immutability,
only to not really mean it, has engaged in acts of fraud and racial animus in-kind that manages to
be emotionally, intellectually, sexually, and racially exploitative. To oppose the government's
unconstitutional endorsement of homosexual ideology is to defend the civil rights movement
lead by Pastor Martin Luther King Jr. The Plaintiffs are unequivocally and without apology
defending the integrity of the Civil Rights movement lead by Pastor Martin Luther King Jr,
which is threatened by the Defendants' refusal to think logically and to understand the
Constitution as it was written. To oppose this action is a per se act of racial hatred and animus
towards the absolute truth that serves as the master narrative of the United States Constitiona
itself.

51. To embrace the fake gay rights movement is deeply offensive to people of color, like
Plaintiff Harley, who were required at one point to walk to school, drink from the colored water
fountain, and undergo mistreatment for characteristics that are without question based on
genetics and immutability, not emotional faith-based beliefs. (See Amicus Brief of the National
Alliance of Black Pastors). The Plaintiffs object to the Defendants enforcement of pro-LGBTQ
policies because those policies are not only implausible,  non-secular, and adverse to community
standards of decency, they are also racists.  While there are thousands of ex-gays, there is no

such thing as an "ex-black person." (See Amicus Brief of the National Alliance of Black Pastors). Facts do not care about feelings. Neither does the Establishment Clause.

52. The Defendants know or should know that emotional appeals, even really good ones or pragmatic ones, do not allow the Defendants to usurp the Establishment Clause.  See *Holloman v. Harland*, 3 70 F.3 1252 (11th Cir. 2004).   The basis for the Defendants' endorsement of non-secular conduct complained of here by the the Plaintiffs is predicated exclusively on emotional appeals and manipulation of the Fourteenth Amendment's Equal Protection and Substantive Due Process Clauses.

53. The Plaintiffs contend that man-woman marriage policies enforced by the Defendants do not violate the Establishment Clause because the policies, just like man-woman marriage, are natural, neutral, and non-controversial.[23] The Plaintiffs do not challenge the Defendants' enforcement of policies that endorse man-woman marriages, since it is fact-based marriage, and such marriage do not put religion over non-religion. Man-woman marriage policies do not erode community standards of decency when enforced nor do they endanger the public's health, safety, and welfare. Man-woman marriage policies do not lead to self-mutilation sex-change operations that Delta Lambda Phi hopes to promote to children with the government's endorsement.

## NATURE OF THE CASE

---

[23]  Man-woman marriage and man-woman marriage policies are natural, neutral, and non-controversial. Man-woman marriage policies are considered secular and not a sham because they actually accomplish their intended purposes and do not put religion over non-religion. Traditional marriage arose out of the "the nature of things" and did not arise out of a desire to acquire political power and to use government as a tool to show the irresponsible gospel of moral relativism down the throats of our citizens.. See G. Quale, A History of Marriage Systems 2 (1988); cf. M. Cicero, De Officiis 57 (W. Miller transl. 1913). *Obergefell* at 5 (Roberts Dissent). Roberts in his dissent in *Obergefell* also stated: "In his first American dictionary, Noah Webster defined marriage as "the legal union of a man and woman for life," which served the purposes of "preventing the promiscuous intercourse of the sexes, . . . promoting domestic felicity, and . . . securing the maintenance and education of children." 1 An American Dictionary of the English Language (1828).

54. The Plaintiffs repeat and incorporate by reference all of the above allegations of this Complaint as though fully set forth herein.  In terms of the nature of the cause of action, the Court has a duty to determine the trajectory of the First Amendment.  The Plaintiffs do not merely seek to change the course of law through force of intellect alone or to better develop Establishment Clause jurisprudence by creating a double bind that treats the Secular Humanists in office like a child caught in a lie. No indeed! The Special Forces Of Liberty, Warriors For Christ, and De Facto Attorney Generals have much higher aspirations than that in asking this Article III Court and every legislative body in the Country to comply with their mandatory duty under Article VI and to enforce the Establishment Clause as it was written.  The Court's paramount duty is to interpret the law, and it is a legislative fact that the Honorable Court can take notice of that nearly every state and the Federal Congress will be introducing and passing (1) the Marriage And Constitution Restoration Act and (2) a resolution that resolves that Secular Humanism is a religion for the purpose of the Establishment Clause at the 2019 legislative session. Marriageconstitutionrestorationact.com.   What this means is that the both the Federal and State government to include the State of Louisiana are going to have to completely and totally disentangle itself from the LGBTQ church. What this means in practice is this: overnight there can be (1) no more legally recognized parody marriages, (2) no more sexual orientation discrimination statutes like CADA,  (3) no more transgender bathroom nonsense, (4) no more Drag Queen Story hours on government property, (5) no more changing pronouns, (6) no more government paid for sex change operations, (7) no more changing birth certificates, etc. The federal and state government are going to have to completely and totally disentangle itself with the LGBTQ church in a single instance. That is, the Establishment Clause requires of the United

States Constitution requires that the State and Federal Government get out of the parody

marriage business and to the identity politics game, which has alway been nothing more than an

imperialistic political power play that is incredibly toxic and religiously motivated in a manner

that is intellectually, sexually, racially, and emotionally exploitative.

55.  The United States is a Constitutional republic. The Establishment Clause of the United

States was in place long before the rise of the LGBTQ church. All legally recognized gay

marriages and pro-gay policies have always been unconstitutional and are constitutionally

unrecognizable at this very moment. The Court and the Defendants have an insurmountable duty

under Article VI of the United States Constitution to declare it as such. Article VI reads

> The Senators and Representatives before mentioned, and the Members of the several
> State Legislatures, and all executive and judicial Officers, both of the United States and
> of the several States, shall be bound by Oath or Affirmation, to support this Constitution.

For the Defendants to take any government action whatsoever to endorse or respect LGBTQ

orthodoxy does not "support this Constitution," it undermines it and erodes its supremacy. The

governments entanglement with the LGBTQ church has proven to be such an epic disaster that it

has gotten to the point that any government official who is incapable of seeing that

homosexuality and transgenderism are both immoral and non-secular is unfit to be in office for a

lack of character fitness.  Government officials in office who cannot tell the objective difference

between right and wrong, real and fake, and secular and non-secular, cannot be expected to

honor their duty to uphold the Constitution under Article VI.

56. The Honorable District Court Judge assisted to this case - whether appointed by a Democrat

or a Republican - must check his religious and political preferences at the door and apply the

Establishment Clause of the United States Constitution to the facts and evidence presented no

matter who it offends. The Court is ultimately going to have to indirectly overrule *Obergefell* and *Windsor* in effect, while reaffirming the right of an individual to buy into transgenderism and LGBTQ ideology under the Free Exercise Clause of the First Amendment of the United States Constitution. *Obergefell* was described as an "egotistic judicial putsch" that causes Secular Humanists in office to constitute an internal "threat to American Democracy." *Obergefell* at 1-6 (Scalia Dissenting). "Stare Decisis" does not keep *Obergefell* from being overruled because Supreme Court has held that "questions which merely lurk in the record, neither brought to attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Cooper Industries, Inc. v. Aviall Services, Inc.* 543 U.S. 157 (2004). The Establishment Clause claims were "lurking" in the record but undecided in *Obergefell*. "[Stare Decisis]is at its weakest when [the courts] interpret the Constitution because our interpretation can be altered only by constitutional amendment or by overruling our prior decisions." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 63, 116 S.Ct. 1114, 1127, 134 L.Ed.2d 252 (1996); *St. Joseph Stock Yards Co. v. United States*, 298 U.S. 38, 94, 56 S.Ct. 720, 744, 80 L.Ed. 1033 (1936) (Stone and Cardozo, JJ., concurring in result) ("The doctrine of stare decisis ... has only a limited application in the field of constitutional law").

## CAUSES OF ACTION

### I. ENJOINING THE STATE FROM LEGALLY RECOGNIZING ANY PARODY MARRIAGE OR PRO-GAY POLICY
### A. GAY MARRIAGE POLICY, SEXUAL ORIENTATION STATUTES, DRAG QUEEN STORY HOUR FAIL THE LEMON TEST AND VIOLATE THE FIRST AMENDMENT ESTABLISHMENT CLAUSE BY A LANDSLIDE

57. The Plaintiffs repeat and incorporate by reference all of the above allegations of this Complaint as though fully set forth herein. The First Amendment to the United States

Constitution, as applied to the States through the Fourteenth Amendment, provides that "Congress shall make no law respecting an establishment of religion." U.S. CONST. Amend. I. This provision, among other things, "prohibits government from appearing to take a position on questions of religious belief or from 'making adherence to a religion relevant in any way to a person's standing in the political community.'" *County of Allegheny v. ACLU*, 492 U.S. 573, 594 (1989) (quoting *Lynch v. Donnelly*, 465 U.S. 668, 687 (1984)(O'Connor, J., concurring)). The government must "remain secular" and must "'not favor religious belief over disbelief.'" Id. at 610.[24]

58. The Establishment Clause was never designed to just single out "institutionalized religions," like Christianity and Judaism, which tends to parallel transcultural self-evident truth that serves as the master narrative of the Constitution itself. The Establishment Clause was also designed - if not more so - to prohibit the government from legally endorsing, recognizing, and respecting the truth claims floated by "non-institutionalized religions," to include the truth claims asserted

---

[24] *Cnty. of Allegheny v. ACLU*, 492 U.S. 573, 593-94 (1989). To pass muster under the Establishment Clause, a practice must satisfy the *Lemon* test, pursuant to which it must: (1) have a valid secular purpose; (2) not have the effect of advancing, endorsing, or inhibiting religion; and (3) not foster excessive entanglement with religion. Id. at 592 (citing *Lemon v. Kurtzman*, 403 U.S. 602 (1971)). Government action "violates the Establishment Clause if it fails to satisfy any of these prongs." *Edwards v. Aguillard*, 482 U.S. 578, 583 (1987); *Agostini v. Felton*, 521 U.S. 203, 218 (1997). All that is needed to enjoin the state from issuing marriage licenses to self-identified homosexuals to show that gay marriage policy violates at least one prong of the *Lemon* tests. Gay marriage fails all three. In addition to this so-called *Lemon* test, "[t]he Supreme Court has . . . advanced two other approaches by which an Establishment Clause violation can be detected." *Doe ex rel. Doe v. Elmbrook Sch.* Dist., 687 F.3d 840, 849 (7th Cir. 2012)(en banc), cert. denied, 134 S. Ct. 2283 (2014). One approach—termed the "endorsement test"—has its roots in Justice O'Connor's concurrence in *Lynch*, 465 U.S. at 690 (O'Connor, J., concurring), and was subsequently adopted by the entire *Court in County of Allegheny*, 492 U.S. at 592-93. Under this test, courts: "ask[] whether, irrespective of government's actual purpose, the practice under review in fact conveys a message of endorsement or disapproval. When [a court] find[s] that a reasonable person could perceive that a government action conveys the message that religion or a particular religious belief is favored or preferred, the Establishment Clause has been violated." *Freedom From Religion Foundation v. City of Marshfield*, 203 F.3d 487, 493 (7th Cir. 2000)(internal quotation and citation omitted) (emphasis in original). Some Circuits have observed that the endorsement test is "a legitimate part of *Lemon*'s second prong." *Elmbrook*, 687 F.3d at 850.

by the religion of postmodern western moral relativism, expressive individualism, and Secular

Humanism.[25] "Secularism" is having a crisis because there is hardly anything "secular" about it.

59. The idea that someone was born gay, that they have gay genes, that they came out of an

invisible closet and were thus baptized gay with immutable characteristics amounts to a series of

naked assertions and unproven faith-based assumptions that are implicitly religious, if not merely

an excuse to justify sexual conduct that is questionably moral, obscene, and legal.

60.  To pass muster under the Establishment Clause, a practice must satisfy the *Lemon* test,

pursuant to which it must: (1) have a valid secular purpose; (2) not have the effect of advancing,

endorsing, or inhibiting religion; and (3) not foster excessive entanglement with religion. Id. at

59. (citing *Lemon v. Kurtzman*, 403 U.S. 602 (1971)). Government action "violates the

Establishment Clause if it fails to satisfy any of these prongs." *Edwards v. Aguillard*, 482

U.S.578,583(1987); *Agostini v. Felton*, 521 U.S.203, 218 (1997).

60.  The Defendants' promulgation and enforcement or prospective enforcement of pro-gay and

pro-transgender policies to include issuing the issuing of marriage licenses to individuals who

seek to enter into a parody marriage, distributing a constellation of benefits to self-identified

homosexuals who were allowed to legally marry, a government push to change pronouns,

permitting individuals to change the gender on their birth certificate, transgender bathroom

policies permitting events to take place during regular business hours in government buildings

like the Drag Queen Story hour fails the prongs of the *Lemon* Test and violates the Establishment

Clause because it is State action that constitutes non-secular shams that serve as an indefensible

legal weapon against non-observers of the religion of Secular Humanism, while causing the

---

[25] Moral relativism, Secular Humanism, and evangelical atheism  has been the catalyst for most of the worst
atrocities since the inception of humanity.

government to excessively entangle itself with the religion of Secular Humanism - putting

religion over non-religion. The Defendants actions towards the Plaintiffs have confirmed that.

61. The codification of sexual identity narratives and identity politics and postmodern relativism

has a chilling effect on speech that violates all three prongs of the *Lemon* test. *Lynch v.*

*Donnelly,* 465 U.S. 668, 68794 (1984). The Plaintiffs themselves have been subjected to

coercion in the wake of the Defendants endorsement and enforcement of sexual orientation

statutes and gay marriage policies.

62. Legally recognized gay marriage and other policies that treat LGBTQ ideology as if it was

real fail each prong of the *Lemon* test by a landslide. The codification of sexual identity

narratives and identity politics and postmodern relativism has a "chilling effect" on the

Plaintiffs' speech and freedom of expression that violates the coercion test - both indirect and

direct coercion.[26] The Plaintiffs have been subjected to widespread pressure, libel, and

harassment for asserting their rights even if it makes the fake gay civil rights plight appear to be

removed from reality, invalid, frivolous, and implausible. People of other religions, like

Christians living in this state and in others, to include the Plaintiffs, have been subjected to

persecution from self-identified homosexuals and Secular Humanists for refusing to think about

marriage, sex, and morality, like they do.

63. The state knows or should have known that by legally recognizing gay marriage, it would

subject Christians and others - to include the Plaintiffs - to religious persecution for not

subscribing to or supporting and enabling the homosexual worldview that many well developed

countries treat as illegal for good cause shown. The Plaintiffs and others have standing to

---

[26] *Lee v. Weisman,* 505 U.S. 577 (1992); *School District v. Doe,* 530 U.S. 290 (2000); *County of Allegheny v. ACLU,* 492 U.S. 573 (1989).

proceed under this claim as taxpayers having a logical nexus to do so as established through sworn statements. The fact that the Plaintiffs are working directly with the State legislature on tax policies gives them a logical nexus to be concerned about where their taxpayer dollars are going.

64. Under this claim, the Plaintiffs do not have to show actual coercion imposed on them, but the Plaintiffs here have been subjected to ruthless persecution by the LGBTQ church for refusing to respect their wildly irrational and immoral faith-based ideology.

65. Legally recognized gay marriage has given the LGBTQ church license to infilrate public schools and public buildings, like the Lafayette Public Library, with the intent of indoctrinating minors to their worldview that is questionably obscene, moral, and lawful and that is non-secular. The Lafayette Public Library is adding to the Constitutional injustice buy allowing self-identified transgenders to use the library to indoctrinate minors there as well - which conveys that people in positions of power endorse LGBTQ religious orthodoxy.  This endorsement has the effect of relegating the Plaintiffs to second class citizen status, since they are non-observers of the religion of Secular Humanism as advocated by the LGBTQ church.

66.  The Plaintiffs move the Court to enjoin the Defendants from legally respecting, endorsing, and enforcing gay marriage policies, transgender bathroom policies, and any statute that treats sexual orientation as a civil rights issue.

67. The Plaintiffs seek a declaration that man-woman marriage policy as implemented by the Defendants is secular in nature because it is natural, neutral, and non-controversial. See the *Amicus* Brief of the American Family Association of PA.

68. By refusing to allow Pastor Penkoski to give a rebuttal following the Drag Queen Story Hour and by refusing to allow Plaintiff Guidry to host a Bible study for children at the Library, the Defendants have put favored and endorsed the Religion of Secular Humanism over other religions. If the Court allows the Drag Queen Story Hour to go forward, the Plaintiffs request an order that requires that the Library allow Pastor Penkoski to host a story hour immediately following the meeting where he can provide a discourse that challenges the plausibility of the truth claims floated by the self-identified drag queens.

## B. FIRST AMENDMENT ESTABLISHMENT CLAUSE TREATS DIFFERENT SECTS OF THE SAME RELIGION WITH DISPROPORTIONAL FAVOR: DISCRIMINATION OF "RELIGION AND RELIGION"

70. The Plaintiffs repeat and incorporate by reference all of the above allegations of this Complaint as though fully set forth herein. One thing that the Establishment Clause clearly prohibits is the government treating different denominations with disproportionate treatment. *McCreary Cnty, Ky. v. ACLU of Ky.*, 545 U.S. 844, 860 (2005); *Engel v. Vitale*, 370 U.S. 421, 431 (1962). Plaintiffs Harley, Kohl, Gunter, and Sevier have exercised their same right under the Freedom Expression Clause, as self-identified homosexuals and transgenders have, in self-identifying as either polygamists and objectophiles. By issuing marriage licenses to self-identified homosexuals and giving transgender story hours to self-transgenders but not to self-identified zoophiles, polygamists, and objectophiles, the Defendants have discriminated against the Plaintiffs and others under the First Amendment Establishment Clause, which is applicable to the states under the Fourteenth Amendment, for discriminating against "religion and religion."

71. The government lacks a narrowly tailored and compelling interest to treat homosexual denomination with disproportional favor in relationship to the zoophile, polygamist, and objectophile sect.[27] The disproportionate treatment is arbitrary. All self-asserted sex-based identity narratives that are questionably real, moral, and lawful are all part of different denominational sects within the overall church of Western postmodern relativism and expressive individualism - i.e. Secular Humanism.  Zoophilia, objectophilia, polygamy, transgenderism, and homosexuality are all self-asserted sex-based identity narratives that are predicated on a series of naked assertions and unproven faith-based assumptions that are at best implicitly religious and are part of the same ideological spectrum.  Those self-asserted sex-based identity narratives are inseparably linked to the religion of Secular Humanism.

72. Plaintiffs Harley, Kohl, Gunter, and Sevier were injured by the fact that individuals who self-identify as homosexuals and who marry based on that identity get to have the "state's imprimatur"[28] on their marriage licenses and ceremonies - entitling them to a constellation of benefits - that are distributed by the enforcement of laws overseen by the Attorney General and the Governor at the taxpayers expense, whereas the Plaintiffs Plaintiffs Harley, Kohl, Gunter, and Sevier were arbitrarily denied that same constellation of taxpayer funded benefits because they have less political clout, having progressed further into the cult of progressivism. The Plaintiffs and others are arbitrarily denied all kinds of benefits by the state because they are merely in a minor sect in the church of moral relativism.

---

[27] *McCreary Cnty, Ky. v. ACLU of Ky.*, 545 U.S. 844, 860 (2005); *Engel v. Vitale*, 370 U.S. 421, 431 (1962).
[28] *Obergefell* at 10 (Thomas Dissenting).

73.  Plaintiffs Harley, Kohl, Gunter, and Sevier are being treated differently under the law because they are part of a less popular denomination within the church that is part of the religion of Secular Humanism. It violates the Establishment Clause when different denominations within the same religious spectrum are treated with difference degrees of favor by government actors.

74. Plaintiffs Harley, Kohl, Gunter, and Sevier have standing to demand and they do demand that the Court enjoin the Defendants from legally respecting, endorsing, and recognizing gay marriage policies, pro-transgender policies, conversion therapy bans, statutes that treat sexual orientation as a civil right, and other related policies so that the denominations within the church of Secular Humanism are treated equally under the law once again.  That is Plaintiffs Harley, Kohl, Gunter, and Sevier have an additional reason to demand that the State completely get out of the Parody marriage business by making a second argument under the Establishment Clause to pile on the first one.

## C.  RES IPSA LOQUITUR (The Thing Speaks for itself)

75.   The Plaintiffs repeat and incorporate by reference all of the above allegations of this Complaint as though fully set forth herein.  The Defendants (individually and collectively) have a "duty" to act "reasonably."  The states have a compelling interest to uphold community standards of decency.[29] This State's Constitution demands as much.  Obscenity is unprotected

---

[29] *Paris Adult Theatre I v. Slaton,*  413 U.S. 49, at 63,69 (1973)

harmful speech.[30] Homosexual, transgenderism, polygamy, and objectophila lifestyle are equally obscene.[31]

76.   Community Standards of decency do not evolve, and if they did, it would violate the standards. There is something inherently wrong with the state promoting obscenity and furthering the LGBTQ ideology that is not just faith based by is questionably moral and questionably legal.  There is something that is self-evidently wrong for the LGBTQ community to hijack the race-based civil rights movement in order to shoehorn their plight into a phony Fourteenth Amendment narrative. Such an act that is condoned by government officials amounts to an act of government sanctioned racism.

77.   The fake gay civil rights movement has naturally lead to the transgender bathroom public health crisis and the LGBTQ groups infiltrating elementary schools to indoctrinate children to a sexualized worldview that does not even check out with the human design.  There is something that is self-evidently wrong about that. There is something that is self-evidently wrong about self-identified transgenders who are pretending to be a gender that they are not using the public library to preach to kids about a sexual worldview that was illegal until recently.

78.   The homosexual lobby is supporting human trafficking and child exploitation and the promotion of pornography online because it generates sympathy for their sex-based lifestyle that

---

[30]"Obscenity is not within the area of protected speech or press." *Court v. State*, 51 Wis. 2d 683, 188 N.W.2d 475 (1971) vacated, 413 U.S. 911, 93 S. Ct. 3032, 37 L. Ed. 2d 1023 (1973) and abrogated by *State v. Petrone*, 161 Wis. 2d 530, 468 N.W.2d 676 (1991);;;; *State v. Weidner*, 2000 WI 52, 235 Wis. 2d 306, 611 N.W.2d 684 (2000);;;; *Ebert v. Maryland State Bd. of Censors*, 19 Md. App. 300, 313 A.2d 536 (1973). Obscenity is not protected expression and may be suppressed without a showing of the circumstances which lie behind the phrase "clear and present danger" in its application to protected speech. *Roth v. United States*, 354 U.S. 476 (1957);;;; *United States v. Gendron*, S24 :08CR244RWS (FRB), 2009 WL 5909127 (E.D. Mo. Sept. 16, 2009) report and recommendation adopted, S2 4:08CR 244 RWS, 2010 WL 682315 (E.D. Mo. Feb. 23, 2010);;;; *Chapin v. Town of Southampton*, 4 57 F. Supp. 1170 (E.D.N.Y. 1978);;;; *Sovereign News Co. v. Falke* , 448 F. Supp. 306 (N.D. Ohio 1977);;;; *City of Portland v. Jacobsky*, 496 A.2d 646 (Me. 1985).
[31] *Manuel Enterprises Inc. v. Day*, 370 U.S. 478 (1962)

fails to check out with the human design and is immoral for the same reason that rape by trick is. There is something that is self-evidently immoral about that. The Defendants wrongful decision to promote, respect, endorse, and recognize homosexual orthodoxy has naturally lead to the marginalization and oppression of the Plaintiffs and other non-observers of the religion of Secular Humanism causing them emotional distress and other economic injuries.

79. The Plaintiffs demand that the Court enjoin the Defendants from enforcing non-secular policies that respect or promote homosexual ethos for being self-evidently immoral and harmful to the members of the public, to include the Plaintiffs.

80. Just as a holocaust survivor would be unnerved to see a government embrace Nazism, the Plaintiffs, who have been targeted by the LGBTQ church, are unnerved to see the government endorse it. (See the connection between SA Brown Shirts who were part of the Third Reich and Homosexuality. See also Ernst Rohm).

## II. ALTERNATIVE CLAIMS FOR INJUNCTIVE RELIEF FORCING THE STATE TO LEGALLY RECOGNIZE ALL FORMS OF PARODY MARRIAGE PLEAD UNDER FRCP 8(e)(2)

### A. SUBSTANTIVE DUE PROCESS

81. The Plaintiffs repeat and incorporate by reference all of the above allegations of this Complaint as though fully set forth herein. Plaintiffs Harley, Kohl, Gunter, and Sevier have the right under FRCP 8(e)(2) to plead for an alternative form of relief in the event that the Defendants or the Court feel that it is wise for the government to continue to entangle itself with the most popular rendition of Secular Humanism floated by the largest denomination within the Secular Humanist church. If "gay rights" are "civil rights," then Plaintiffs Harley, Kohl, Gunter, and Sevier are entitled to seek and they do seek the same substantive due process and equal

protection rights afforded to the same-sex litigants in *Obergefell v. Hodges,* 135 S.Ct. 2584

(2015). The Due Process Clause of the Fourteenth Amendment of the United States Constitution

provides that no "State [shall] deprive any person of life, liberty, or property, without due

process of law." U.S. Const Amend XIV, § 1. Individuals are protected by the Due Process

Clause from arbitrary government intrusion into life, liberty and property.

82. Plaintiffs Harley, Kohl, Gunter, and Sevier seek the same substantive due process and equal

protection rights afforded to the same-sex litigants by the United States Supreme Court in

*Obergefell v. Hodge*, 192 L. Ed. 2d 609 (2015).

83. The Defendants marriage policies (especially after the decision in *Obergefell v. Hodges,* 135

S.Ct. 2584 (2015), violated fundamental liberties that are protected by the Due Process Clause of

the Fourteenth Amendment, both on its face and as applied to the Plaintiffs and others with

different-sexual orientations who self-identify as something other than "gay" and "straight."

84. Homosexuality, transgenderism, objectophilia, zoophilia, and polygamy are all equally not a

part of American tradition. To give favor to just one sect is Constitutionally unsound under

Substantive Due Process analysis, if *Obergefell* is good law.

85. If *Obergefell v. Hodges,* 135 S.Ct. 2584 (2015) is good law and not an unprincipled ploy, the

freedom to marry is one of the fundamental liberties protected by the Due Process Clause of the

Fourteenth Amendment. The current policies advanced by the Governor and Attorney General

following *Obergefell v. Hodges,* 135 S.Ct. 2584 (2015), and the Marriage Statutes in dispute

violate this fundamental right protected by the Due Process Clause because it prevents Plaintiffs

Harley, Kohl, Gunter, and Sevier and others from marrying the persons, creatures, and things

based on their personal and individual choice and from having their marriages entered into in

other states and countries from being recognized in this State; and the choice of marriage is

sheltered by the Fourteenth Amendment from, this State's unwarranted usurpation of that choice.

86.  The Defendants' anti-polygamy and anti-objectophile marriage policies infringe on

fundamental liberties protected by the Due Process Clause by discriminating against people in

the non-obvious classes of sexual orientation (like Plaintiffs Harley, Kohl, Gunter, and Sevier),

denying all of them the opportunity to marry civilly, to have their civil marriage in another

jurisdiction legally recognized, and to enter into or maintain the same officially sanctioned

family relationship with their preferred spouse as opposite-sex and same-sex individuals are

currently permitted. For example, by denying those individuals the same "marriage" designation

afforded to opposite-sex and same-sex individuals who married, this State is stigmatizing

beastialist, objectophiles, and polygamists, as well as their children and families, and denying

them the same dignity, respect, and stature afforded by officially recognized opposite-sex and

same-sex family relationships.

87.  Yet under the current definition of marriage where the First Amendment has been discarded,

the marriage discrimination denies those in the different-sex class the legal protections afforded

by laws of this state to opposite-sex and same-sex married individuals on a completely arbitrary

basis which amounts to a bare desire to harm a politically unpopular group.

88.  Because Plaintiffs Harley, Kohl, Gunter, and Sevier seek to exercise their "individual,"

"existing," and "fundamental" right to marry or to have an out of State marriage legally

recognized, their claim that the Marriage Discrimination policies and statutes violated their Due

Process rights and is subject to strict scrutiny.  Further, it is irrelevant that the voters of this state

voted to keep the Government from legally recognizing parody marriages because all parody

marriages are immoral and erode community standards of decency.  Election outcomes do not

determine fundamental rights protected by the Fourteenth Amendment nor the First Amendment

Establishment Clause.

89.  The Defendants arbitrary anti-polygamy and anti-objectophile policy and any marriage

discrimination statute are unconstitutional under the Due Process Clause because they are not

narrowly tailored to a compelling government interest, as applied to all variations of sexual

orientation, not just the majority and true minority. (See the Amicus Brief of the American

Family Association of PA amicus brief).

90.  As a result, the Court, pursuant to 28 U.S.C. § 2201,  enter a declaratory judgment stating

that the Defendants' discrimination policy and any other Louisiana law that bars other less

popular forms of parody marriage, including the Marriage Discrimination Statutes and the

Parish's procedural policies, violate the Due Process Clause of the Fourteenth Amendment, and

should enter a permanent injunction enjoining enforcement or application that those laws and

any other Louisiana laws that once barred same sex-marriage and now continues to bar other

parody marriages of all variety without a legal bases, and compelling Defendants to legally

recognize the Plaintiffs' out of state marriages or to issue a new marriage license.

## B.  EQUAL PROTECTION RIGHTS VIOLATION

91.  The Plaintiffs repeat and incorporate by reference all of the above allegations of this

Complaint as though fully set forth herein. The Equal Protection Clause provides that no state

shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const.

Amend XIV, § 1. The Fourteenth Amendment's equal protection guarantee embodies the

constitutional ideal that "all persons similarly situated should be treated alike." *City of Cleburne*

*v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985). The laws in dispute once discriminated

against same-sex individuals now continues to discriminate against Plaintiffs Harley, Kohl,

Gunter, and Sevier without any valid basis whatsoever, especially if gay marriage is actually

legally valid.

92.  The Defendants' discrimination policies that target self-identified polygamists and

objectophiles violate the Equal Protection Clause of the Fourteenth Amendment, both on their

face and as applied to Plaintiffs Harley, Kohl, Gunter, and Sevier.

93.  For purposes of the Equal Protection Clause, the Defendants' discrimination policies should

be subject to heightened scrutiny because individuals, beyond just gay and straight, are the type

of minority strict scrutiny was designed to protect in the first place. Sexual orientation is a factor

that "generally provides no sensible ground for differential treatment," *Cleburne,* 473 U.S. at

440-41, and sexual orientation meets all four factors requiring heightened scrutiny for a

classification: (1) other-oriented people have suffered a significant history of discrimination in

this country: (2) sexual orientation generally bears no relation to ability to perform or contribute

to society - this is true beyond gay and straight; (3) discrimination against people with a more

progressive sexual identity narrative is allegedly based on an immutable or distinguishing

characteristic that defines them as a group; and (4) not withstanding a measure of recent

progress, people with more evolved sexual orientation identity narratives that go beyond

transgender or homosexual are minorities with limited power to protect themselves from adverse

outcomes in the political process, as demonstrated by Marriage Statutes in dispute.

94.  Under the heightened scrutiny standard, Marriage Discrimination Statutes and the Clerk's

arbitrary discrimination policies in their post *Obergefell v. Hodges,* 135 S.Ct. 2584 (2015)

altered form violate the Equal Protection Clause because they are not "substantially" related to an important governmental purpose. If *Obergefell* is good law, there are no distinctions among lesbians, gay men, pedophiles, objectophiles, beasitalists, polygamists, and heterosexuals that amount to undeniable and real differences that the government might need to take into account in legislating. The real purpose behind the Parish's procedural requirements for marriage and the State's discrimination policies is animus, if *Obergfell* is good law.

95.  Even if the Defendants Marriage Discrimination policies are not analyzed under the heightened scrutiny standard, they still violate the Equal Protection Clause because the classification drawn by the arbitrary policies between self-identified homosexuals and self-identified polygamists and objectophiles is not rationally related to a legitimate state interest, if *Obergefell* is good law.  A state does not have a legitimate interest in disadvantaging an unpopular minority group under the sexual orientation class merely because the group is unpopular, or the private views that self-identified polygamists and self-identified objectophiles hold are morally inferior to self-identified homosexuals or are inferior because there is something psychiatrically wrong and inept with individuals who want to legally marry something other than a member of the same or opposite sex and therefore be entitled to the same constellation of benefits that married self-identified homosexuals are afforded by the States that most of the Defendants distribute.

96.  In fact, the Parish's Marriage policies harm the State interest in equality because it requires that men and women be treated differently only based on discredited and antiquated notions of gender based, if *Obergefell* is good law.[32]

---

[32] Of course, man-man marriage discriminates against women on the basis of gender by telling them that they are not good enough to be a wife and mother. And woman-woman marriage discriminates against men by telling them that they are not good enough to be a father and husband. Man-object marriage does the same but at least the object is

97.  The anti-polygamy and objectophile discrimination policies violate the Equal Protection

Clause in their post *Obergefell v. Hodges,* 135 S.Ct. 2584 (2015) amended form because they

discriminate against objectophiles, beastialists, and polyamists by arbitrarily denying them a

right to marry the item or items of their choice based on their feelings and identity narrative,

whereas those who self-identify as homosexual and heterosexual may do so freely and receive

legal recognition and government benefits - benefits through policies that are enforced by the

Governor and Attorney General. These laws also continue to disadvantage suspect classes in

preventing only self-identified objectophiles, zoophiles, and polygamists, not self-identified

homosexuals, from marrying.  The anti-polygamy and anti-objectophile discrimination policies

also violate the Equal Protection Clause because they onced discriminated against self-identified

gay men and self-identified lesbians who legally married in another state. Those policies

continue to discriminate against self-identified polygamists and self-identified objectophiles who

married in another jurisdiction by denying them the official sanction of their marriage in the

State of Louisiana and the rights and benefits that flow from marriage and that flow out of the

coffers of the State's general fund.  Whereas those who self-identify as heterosexual and

homosexual men and women legally married in another state have their marriage officially

sanctioned by the State of Louisiana, and receive, by operation of law the rights and benefits that

flow from marriage, the true minority of sexual orientation has been arbitrarily denied these

rights.  And this wrongful denial disadvantages a suspect class in preventing only self-identified

---

gender neutral. And person-object marriage is more discriminatory on the basis of gender than legalized man-man
and woman-woman marriage is.  At least the polygamists married is not as discriminatory against men and women,
and at least there is actual procreative potential and a more plausible bases to suggest that polygamy is part of
American tradition and history.

polygamists and self-identified objectophiles, not self-indentified homosexuals, from having out-of-state marriages recognized in this State and in-state marriages authorized.

98. Following *Obergefell v. Hodges,* 135 S.Ct. 2584 (2015) and *United States v. Windso*r,133 S. Ct. 2675, 186 L. Ed. 2d 808 (2013), the anti-polygamy and anti-objectophile discrimination policies restrict civil marriage to individuals of the opposite sex and same-sex, while those who self-asserted a different flavor of sexual orientation are unable to marry more than two people, animals, and objects of their choice or have their parody marriage in another jurisdiction legally recognized in this State. Thus, this State law treats similarly-situated people differently by providing civil marriage to self-identified homosexuals individuals, but not to self-identified polygamists and objectophiles, like Plaintiffs Harley, Kohl, Gunter, and Sevier, who remain discriminated against without a valid justifiable basis. (See the *Amicus* Brief of the National Alliance of Black Pastors and the American Family Association of PA).  As a consequence, self-identified objectophiles and polygamists are not provided the tangible benefits and privileges of marriage. Even if these benefits and privileges were through some other mechanism besides civil marriage, it still would be unequal because the designation "marriage," enjoys a long history and uniform recognition.  Like the self-identified homosexuals whose plight proceeded this one, self-identified polygamists and self-identified objectophiles are therefore unequal in the eyes of the law, and their families are denied the same respect and legal rights as officially sanctioned families.  By purposefully denying civil marriage to individuals who prefer another parody form of marriage, the State's ban on polygamous and objectophilic marriage continues to discriminate on the basis of sexual orientation against the true minorities of a suspect class, if *Obergefell* is good law.

99.  The Defendants' anti-polygamy and objectophile marriage discrimination policies is the result of disapproval or animus against a politically unpopular group, if *Obergefell* was not a sham.  The Defendants' anti-polygamy and objectophile marriage discrimination policies arbitrarily impose a special disability upon those persons alone and deprive them of specific legal protections afforded to opposite-sex and same-sex married couples without any legal justification whatsoever.  Accordingly, the Marriage Statutes at issue violate the Equal Protection Clause of the Fourteenth Amendment in their altered form because they used to single out self-identified homosexuals allegedly but now continue to single out the remaining non-obvious classes of sexual orientation, which continues to unjustifiably impose a disfavored legal status, thereby creating a category of "second class citizens." *United States v. Windsor,* 133 S. Ct. 2675, 186 L. Ed. 2d 808 (2013); *Windsor v. United States,* 699 F.3d 169 (2d Cir. 2012).

## C.  VIOLATION OF 42 U.S.C. § 1983

100.  The Plaintiffs repeat and incorporate by reference all of the above allegations of this Complaint as though fully set forth herein.  Insofar as they are enforcing the terms of the Marriage Discrimination Statutes and the Parish's arbitrary discrimination policies, the Defendants, acting under color of state law, are depriving and will continue to deprive the Plaintiffs individuals of numerous rights secured by the First or Fourteenth Amendments of the United States Constitution in violation of 42 U.S.C. § 1983 for reasons that are completely arbitrary.  The State's denial of marriage rights to self-identified polygamists, zoophiles, and objectophiles is totally arbitrary if self-identified homosexuals are allowed to have the State endorse their marriages based on their self-asserted sex-based identity narratives.

101.  As a result, the Court, pursuant to 28 U.S.C. § 2201, should enter a declaratory judgment stating that the Defendants are barred from recognizing, respecting, endorsing, or enforcing any marriage policy that does not involve a man and a woman, any sexual orientation discrimination statute, any drag queen story hour, any conversion therapy ban, any policy that requires that pronouns be changed, or any policy that treats LGBTQ ideology as it was real for violating 42 U.S.C. § 1983. Alternatively, the Court, pursuant to pursuant to 28 U.S.C. § 2201, should enter a declaratory judgment stating that the Defendants should allow for a polygamist story hour at the library and an Objectophile story hour at the public library for violating 42 U.S.C. § 1983. Furthermore, the Court pursuant to 28 U.S.C. § 2201, should enter a declaratory judgment stating that the Defendants should allow self-identified polygamists and objectophiles to legally marry under 42 U.S.C. § 1983 even though doing so will only further entangle the government with the religion of Secular Humanism.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs respectfully request that this Court:

1. Enter a declaratory judgment that all forms of marriage other than "man-woman" marriage and all self-asserted sex-based identity narratives that are questionably real, moral, and decent are "non-secular" and are a part of the religion of Secular Humanism, western postmodern moral relativism, and expressive individualism;[33]

2. Enter a declaratory Judgment that under the Free Exercise Clause of the United States Constitution anyone in the State of Louisiana may form any self-asserted sex-based identity

---

[33] (see HB 0167 Wyoming by Rep. Lone and HB 4949 by Rep. Long)

narrative, have wedding ceremonies, and live as married people, as long as the doing so does not violate any existing state or federal law.

3.  Enter a declaratory judgment and issue a preliminary and permanent injunction against the Defendants because the State's decision to endorse, enforce, recognize, or respect (1) any marriage policy that does not involve a man and a woman, (2) any sexual orientation discrimination policy, (3) any policy that treats transgenderism as if it was plausible, (4) any government sanctioned sex-change operation, (5) any conversion therapy ban, (6) any policy that would allow citizens to change their sex on their birth certificates, (7) any drag queen story hour held at the public library on the taxpayers dime, (3) any policy that requires that pronouns be amendment violates the First Amendment Establishment Clause under the *Lemon* test for (1) constituting non-secular shams that (2) creating an indefensible legal weapon against non-observers and that (3) the excessive entanglement of government with the religion of Secular Humanism, which is a religious worldview that the United States Supreme Court and most of the Courts of appeals have already recognized is a religion.

4. Enter a declaration that (1) the idea that people are born in the wrong body, (2) people are born with gay genes, (3) the to disagree with a self-identified liberal makes you a bigot, (3) that people who self-identify as gay come out of an invisible closest and are baptized homosexual amount to a series of unproven faith based assumptions and naked assertions that are implicitly religious and inseparably linked to the religion of Secular Humanism.

5. Issue a declaration that for the government to respect and endorse LGBTQ and transgender orthodoxy has the effect of putting religion over non-religion in a manner that is unconstitutional;

6. Issue a declaration that all forms of parody marriage are inseparably linked to the religion of Secular Humanism, as confirmed insurmountably by the water tight testimony of former homosexual and transgender activists, persecuted Christians who lost everything in the wake of *Obergefell,* medical experts, and licensed ministers;[34]

7. Issue a preliminary and permanent injunction, enjoining the Defendants from falsely equating the race-based civil rights plight to the gay civil rights plight, since the race-based civil rights plight was actually based on immutability and the gay civil rights plight is based on emotion and a desire to entangle the government with the religion of Secular Humanism;

8. Enter a Declaration and injunction requiring that if the Library is permitted to host the Drag Queen Story Hour that immediately following it, Pastor Penkoski must be allowed to conduct a rebuttal for the same amount of time.

9. Enter a Declaratory Judgment that man-woman marriage is the only secular form of marriage, and thereby, the State can legally recognized it since man-woman marriage and man-woman marriage policies are natural, neutral,  non-controversial, and secular in nature and since man-woman marriage policies, unlike all parody marriage policies, accomplish their intended purposes and do not put religion over non-religion;

10. Enter a Declaratory Judgment and issue a preliminary and permanent injunction that reflects that man-man, woman-woman, man-object, man-animal, and man-multiperson marriages and self-asserted sex-based identity narratives that are questionably real, moral, decent, and

---

[34] (DE_ Lisa Boucher ¶¶ 1-10; DE _ Quinlan ¶¶ 1-37; DE _ Pastor Cothran ¶¶ 1-50; DE _ Dr. King ¶¶ 1-20; DE _ Dr. Cretella ¶¶ 1-20; DE _ Goodspeed ¶¶ 1-20; DE _Grace Harley ¶¶ 1-25; DE _Kohl ¶¶ 1-12; DE _ Pastor Cuozzo; ¶¶ 1-21; DE _ Pastor Farr ¶¶ 1-33; DE _ Pastor Penkoski ¶¶ 1-34; DE _ Pastor Cairns ¶¶ 1-30;; DE _Christian Resistance ¶¶ 1-21; DE _ Special Forces Of Liberty ¶¶ 1-34). See Amicus Briefs of the Center For Garden State Families; the WW Bridal and the American Family Association of PA; National Alliance of Black Pastors; and the Coalition of Doctors Defending Reparative Therapy

non-secular are all equally obscene and have a tendency to community standards of decency and that the State of Louisiana has a compelling interest to uphold community standards of decency;

11. Enter a Declaratory Judgment and issue a preliminary and permanent injunction to prevent the Public Library from hosting the transgender library hour, since doing so endorses non-secular activity and has the effect of excessively entangling the government with the religion of Secular Humanism.

12. Enter a Declaratory Judgment and issue a preliminary and permanent injunction preventing the Defendants from respecting and enforcing pro-gay policies since it has lead to Christian persecution and an effort for Secular Humanists to infiltrate elementary schools with the purpose of indoctrinating minors to their jaded worldview on sex, faith, morality, and marriage.

13. Enter a Declaration that *Obergefell v. Hodges,* 135 S.Ct. 2584 (2015) is overturned because the First Amend Establishment Clause and Free Exercise Clause have exclusive jurisdiction over how the Federal and State government must respond to marriage requests of all kinds that do not involve a man and a woman and who the State and Federal government must respond to self-asserted sex-based identity narratives that are questionably real, moral, and non-secular and that have a tendency to erode community standards of decency.

14. Issue a preliminary and permanent injunction that prevents the LGBTQ church from entering into public schools or public library with the purpose of indoctrinating minors to their religious ideological worldview.

15. Issue a declaration that the gay pride rainbow colored flag is the paramount religious symbol of the LGBTQ church;

16. Issue a declaration that all parody marriages are all equally not part of American heritage and tradition;

17. Issue a declaration that allows all self-identified homosexuals, polygamists, and objectophiles to have wedding ceremonies and to live as married people do in accordance with rights afforded under the Freedom of Expression Clause of the First Amendment but that the State cannot legally respect, endorse, or recognize any form of parody marriage as actual marriage;

18. Issue a declaration and a preliminary and permanent injunction that if the Public Library is to allow the Drag Queen Story Hour to take place that immediately following it, Pastor Penkoski must be allowed to provide a rebuttal for the same duration of time.

19.  Issue a declaration and a preliminary and permanent injunction to prevent the librarians from picking out books for non-secular events.

20. Issue an ex parte preliminary injunction to prevent the Drag Queen story hour from going forward that is current scheduled for October 6, 2018 until these matters are fully adjudicated.

21. Issue an order allowing the Plaintiff Sevier and Gunter to have ECF filing access.

22. Issue an order waiving Pro Hac requirements for Attorney Burris, given exigent circumstances.

23. Issue an order allowing third parties - on both side - leave to file amicus briefs.

24. Issue an order that finds that Plaintiff Sevier that finds that Plaintiff Sevier is in good standing to withdraw and appear on behalf of co-plaintiffs, since the Tennessee Supreme Court transferred his status to inactive due to mental incapacity through fraud and without following any proper procedure in reprisal for his decision to expose the corruption of the Tennessee ethics

commission  - which has immense animus towards non-observers of the religion of Secular

Humanism.

ALTERNATIVE RELIEF FOR THE CAUSES PLEAD UNDER SOUGHT BY PLAINTIFFS

HARLEY, SEVIER, KOHL, AND GUNTER ONLY UNDER FRCP 8(e)(2),

25. If and only if the first form of relief is not provided, enter a declaratory judgment that the

Defendants anti-polygamy and anti-objectophile discrimination policies violate the Due Process,

Equal Protection, Freedom of Association, Full Faith and Credit, Supremacy, and/or other

clauses of the United States Constitution as it relates to barring marriages that involve one person

and one object or more than two people;

26. enter a declaratory judgment that the Parish violated Plaintiff Harley's, Kohl's, Gunter's, and

Sevier's Equal Protection and Substantive Due Process rights afforded under Fourteenth

Amendment in keeping with the holding in *Obergefell v. Hodges,* 135 S.Ct. 2584 (2015) by

denying Plaintiffs Harley, Kohl, Gunter, and Sevier their existing, individual, and fundamental

right to marry based on their personal choice and their personal autonomy;

27. Enter an order directing Defendants to recognize, endorse, and respect marriage request and

marriages beyond man-man, woman-woman, and man-woman entered into outside of this State;

28. Enter a Declaration that all statutes that treat sexual orientation as a civil right serve to also

protect self-identified polygamists and objectophiles, not just self-identified homosexuals;

29. Award costs of suit, including reasonable attorneys' fees under 42 U.S.C. § 1988;

30. Enter all further relief to which Plaintiffs may be justly entitled.

Respectfully Submitted,

/s/Chris Sevier Esq./
DE FACTO ATTORNEY GENERALS
SPECIAL FORCES OF LIBERTY

/s/Cynthia Burris Esq./
SPECIAL FORCES OF LIBERTY
215 Bulter Court Apt.

BPR#026577
(615) 500 4411
ghostwarsmusic@gmail.com
9 Music Square South
Nashville, TN 37203
420 w 42
New York, NY
1LT 13th ECF Echo Delta
ROL Alpha Bravo Foxtrot

/s/John Gunter Jr./
SPECIAL FORCES OF LIBERTY
215 Bulter Court Apt.
Chapel Hill, NC 27514
techlawjohn123@gmail.com
(801) 654 5973
SMG Kilo Yankee

Chapel Hill, NC 27514
bburris@lynchfoundationforchildren.org
Attorney Of Record For Plaintiffs
Kohl, Harley, Guidry, Penkoski
SMG Kilo Yankee
PRO HAC