1

## IN THE UNITED STATES DISTRICT COURT DISTRICT FOR THE WESTERN DISTRICT OF LOUISIANA

AARON GUIDRY, member of Warriors For Christ and Special Forces Of Liberty, LT MARK CHRISTOPHER SEVIER, De Facto Attorney Generals and Special Forces Of Liberty,  SGM JOHN GUNTER JR, Special Forces Of Liberty, WHITNEY KOHL, Special Forces Of Liberty, JOAN GRACE HARLEY, Special Forces Of Liberty, PASTOR RICH PENKOSKI, Warriors For Christ and Special Forces Of Liberty

V.

TERESA ELBERSON, director of the Lafayette Public Library, JOHN BEL EDWARDS, in his official capacity as Governor of Louisiana, JEFFREY MARTIN LANDRY, in his official capacity as Attorney General of Louisiana, Hon. STUART R. SHAW, in his official capacity as the Red River Parish Clerk, JOEL ROBIDEAUX, in his official capacity as Mayor of Lafayette *Defendants*

Case No: 6:18-cv-01232-RRS-PJH
The Honorable
Judge Robert R Summerhays
The Honorable Magistrate Judge
Patrick J. Hanna

## PASTOR PENKOSKI'S MEMORANDUM IN SUPPORT OF EMERGENCY MOTION FOR AN EMERGENCY EX PARTE RESTRAINING ORDER TO TEMPORARILY ENJOIN THE LAFAYETTE PUBLIC LIBRARY FROM HOSTING THE DRAG QUEEN STORY HOUR ON OCTOBER 6,  2018

*"Silence in the face of evil is itself evil: God will not hold us guiltless. Not to speak is to speak. Not to act is to act."* — *Dietrich Bonhoeffer*

## **TABLE OF CONTENTS**

I.  REQUEST FOR ORAL ARGUMENT
...................................................................................................................1

II.  DEFENDING THE FREE EXERCISE RIGHTS OF SELF-IDENTIFIED TRANSVESTITES AND HOMOSEXUALS PURSUANT TO THE FIRST AMENDMENT
...................................................................................................................3

III.  EXCUSABLE DELAY IN FILING
...................................................................................................................3

IV.  NOTICE OF HEARING
...................................................................................................................5

V.  STATEMENT OF RELEVANT FACTS
...................................................................................................................6

VII. STANDARD OF REVIEW
...................................................................................................................8

VIII.  ARGUMENT
...................................................................................................................9

A.  LIKELIHOOD OF SUCCESS
...................................................................................................................9

(1)Targeting Minors WIth Indoctrination Through The Use Of Government Assets Constitutes Excessive Endorsement And Excessive Entanglement
...................................................................................................................9

(2)  Public Government Forum v. Private Government Forum
...................................................................................................................12

(3)  According To An Assessment From Safe Libraries The Lafayette Public Library Is Not Following Its Own Guideline
...................................................................................................................16

B.  A SHOWING OF IRREPARABLE HARM FAVORS THE PLAINTIFFS
...................................................................................................................19

C. BALANCE OF EQUITIES FAVORS THE ISSUANCE OF RESTRAINT ORDER
...................................................................................................................21

 Injunction Against the Lafayette Public Library To Restrain Self-Identified Transvestites From Pushing To Recruit Children To Normalize Their Lifestyle Is In The Public Interest.
...................................................................................................................22

IX  CONCLUSION
...................................................................................................................25

**Table Of Cases**

*Bookcase, Inc. v. Broderick,*
18 N.Y.2d 71 (1966)

...................................................................................................................24

*Bowers v. Hardwick,*
478 U.S. 186 (1986)
...................................................................................................................10

*Brand v. Motley,*
526 F3d 921 (6th Cir. 2008)
...................................................................................................................12

*Clark v. Prichard,*
812 F.2d 991, 993 (5th Cir.1987
...................................................................................................................14

*Canal Authority of the State of Florida v. Callaway,*
489 F.2d 567 (5th Cir. 1974)
...................................................................................................................8

*Cheneau v. Bank of Am. NA,*
2015 WL 12564181 (E.D. La. Oct. 9, 2015)
...................................................................................................................8

*City of Cincinnati v. Adams,*
42 Ohio Misc. 48 (Mun. 1974)
...................................................................................................................4

*City of Portland v. Jacobsky,*
496 A.2d 646 (Me. 1985)
...................................................................................................................22

*Cleveland Bd. of Educ. v. LaFleur,*
414 U.S. 632, 63940 (1974)
...................................................................................................................25

*Cockrum v. Carter,*
2014 WL 1330185 (E.D. La. Apr. 3, 2014)
...................................................................................................................8

*Concerned Women for Am. Inc. v. Lafayette Cty.,*
883 F.2d 32 (5th Cir. 1989)
...................................................................................................................14

*Cornelius v. NAACP Legal Defense & Educ. Fund,*
473 U.S. 788, 803 (1985)
...................................................................................................................13, 15

*County of Allegheny v. ACLU,*
492 U.S. 573 (1989)
...................................................................................................................25

*Doran v. Salem Inn, Inc.,*
422 U.S. 922 (1975)
...................................................................................................................14

*Ebert v. Maryland State Bd. of Censors,*
19 Md. App. 300 (1973)
...................................................................................................................22

*Edwards v. Aguillard,*
482 U.S. 578 (1987)

.................................................................................................10, 11

*Enterprise Intern., Inc. v. Corparcion Estatal Petrolera Ecuatoriana,*
762 F.2d 464 (5th Cir. 1985)
.........................................................................................................9

*Engel v. Vitale,*
370 12 U.S. 421 (1962)
........................................................................................................20

*Gearhart Indus. v. Smith Int'l, Inc.,*
741 F.2d 707 (5th Cir.1984)
........................................................................................................14

*Ginsberg v. New York,*
390 U.S. 629 (1968)
........................................................................................................24

*Holloman v. Harland,*
370 F.3 1252 (11th Cir. 2004)
.................................................................................................13, 20

*In re Fuselier,*
2010 WL 231739 (Bankr. E.D. La. Jan. 13, 2010)
.........................................................................................................8

*In re Fredeman Litigation,*
843 F.2d 821(5th Cir.1988)
........................................................................................................14

*Janvey v. Alguire,*
647 F.3d 585 (5th Cir. 2011)
.........................................................................................................9

*Jacobellis v. Ohio,*
378 U.S. 184 (1964)
........................................................................................................22

*Landell v. Sorrell,*
382 S3d. 91 (2nd Cir. 2004)
........................................................................................................12

*Lawrence v. Texas,*
539 U.S. 558 (2003)
........................................................................................................10

*Lebron v. Secretary of Florida,*
772 F3d 1352 (11th Cir 2014)
........................................................................................................12

*Lee v. Weisman,*
505 U.S. 577 (1992)
.................................................................................................10, 25

*Lemon v. Kurtzman,*
403 U.S. 602 (1971)
........................................................................................................11

*Los Angeles v. Alameda Books, Inc.,*
535 U.S. 425 (2002)

..................................................................................................................3
*Masterpiece Cakeshop v. the Colorado Civil Rights Commission,*
584 U. S. ____ (2018)
...........................................................................................................24, 25
*McDonald v. Santa Fe Trail Transp. Co.,*
427 U.S. 273 (1976)
...............................................................................................................25
*Meis v. Sanitas Serv. Corp.,*
511 F.2d 655, 656 (5th Cir. 1975)
................................................................................................................8
*Miller v. California,*
413 U.S. 15, 3034 (1973)
..............................................................................................................22
*Mishkin v . State of New York,*
383 U.S. 502 (1966)
..............................................................................................................24
*Newdow v. Congress,*
292 F.3d 597 (9th Cir. 2002)
..............................................................................................................20
*Obergefell v. Hodges,*
135 S.Ct. 2584 (2015)
..............................................................................................................24
*Ortega v. Recreation & Parks Comm'n for Par. of E. Baton Rouge,*
2018 WL 3471890 (La. App. 1 Cir. 7/18/18)
..............................................................................................................13
*Paris Adult Theatre I v. Slaton,*
413 US 49, (1973)
..............................................................................................................24
*Real Alternatives, In c. v. Burwell,*
150 F. Supp. 3d 419, 440–41 (M.D. Pa. 2015)
..............................................................................................................11
*Real Alternatives, Inc. v. Sec'y Dep't of Health & Human Servs.,*
 2017 WL3324690 (3d Cir. Aug. 4, 2017)
..............................................................................................................11
*Republican Party of Minn. v. White,*
536 U. S. 765, 793 (2002)
..............................................................................................................24
*Schenck v. United States,*
249 U.S. 47 (1919)
..............................................................................................................22
*Schlegel v. United States,*
416 F.2d 1372, 1378 (Ct. Cl.1969)
..............................................................................................................24
*Sovereign News Co. v. Falke,*
448 F. Supp. 306 (N.D. Ohio 1977)

.....................................................................................................................22

*State v. Petrone*,
161 Wis. 2d 530 (1991)
.....................................................................................................................22

*Torcaso v. Watkins*,
367 U.S. 488 (1961)
.....................................................................................................................11

*United States v. Gendron*,
2009 WL 5909127 (E.D. Mo. Sept. 16, 2009)
.....................................................................................................................22

*United States v. Windsor*,
133 S. Ct. 2675 (2013)
.....................................................................................................................24

*Ward v. Rock Against Racism*, --- U.S. ----, ----,
109 S.Ct. 2746 (1989)
.....................................................................................................................15

*Washington Ethical Society v. District of Columbia*,
101 U.S. App. D.C. 371 (1957)
.....................................................................................................................11

*Welsh v. U.S,*
1970398 U.S. 333 (U.S. Cal. June 15)
.....................................................................................................................11

*Widmar v. Vincent*,
454 U.S. 263 (1981)
.....................................................................................................................15

*Zablocki v. Redhail*,
434 U.S. 374 (1978)
.....................................................................................................................25


Rules
Fed. R. Civ. P. 65
.................................................................................................................1, 8

LR65.1
.....................................................................................................................1


LR78.1
.....................................................................................................................2

R-062-2018
.....................................................................................................................4

La. Stat. Ann § 14:91.11
.......................................................................................................4, 9, 23, 24

La. Stat. Ann. § 25:214
.....................................................................................................................5

2 Encyclopaedia of the Social Sciences, 293

………………………………………………………………………………....11

J. Archer, Faiths Men Live By 120—138, 254—313 (2d ed. revised by Purinton 1958)

………………………………………………………………………………....11

Stokes & Pfeffer

………………………………………………………………………………....11

NOW COMES Pastor Penkoski, founder of Warriors For Christ, a member of the Special Forces Of Liberty, and a former member of the United States Navy, seeking a temporary restraining order pursuant to Fed. R. Civ. P. 65 et. seq. and LR65.1.[1]  The Plaintiffs respectfully request that this Honorable Court temporarily enjoin Defendant Elberson and Defendant Robideux, stopping the Lafayette Public Library from hosting the "Drag Queen Story Hour" scheduled for October 6, 2018 to be hosted in children's section of the library.  The evidence provided to the Plaintiffs from Safe Libraries shows that the Lafayette Library has failed to comply with its own policies.  The transvestite exhibition complained of is designed to expose minors to obscene, indecent, and non-secular material that erodes community standards of decency, normalizes false permission giving beliefs about sex, and constitutes sexual grooming of minors by self-identified transvestites with the government's stamp of approval. Pastor Penkoski and the other Plaintiffs, some of whom intend to have their children at the Library on October 6, 2018, do not want their kids exposed to the obscene non-secular display.  Moreover, the evidence shows that the Library is misusing government assets in an effort to abuse government authority to indoctrinate minors to unproven religious truth claims that are inseparably linked to the religion of Secular Humanism in manner that has the effect of excessively entangling the government with the religion of postmodern western individualistic moral relativism and expressive individualism, referred to by the United States Supreme Court and the legislative branch as "Secular Humanism." The fact that the Lafayette public library is hosting the Drag Queen Story Hour in the children's division of the public library regarding non-secular speech crafted to indoctrinate minors is an evil that the Establishment Clause does not allow.

## I.    REQUEST FOR ORAL ARGUMENT

---

[1] LR65.1 Temporary Restraining Orders and Preliminary Injunctions An application for a temporary restraining order or for a preliminary injunction shall be made in a document separate from the complaint. An application for a temporary restraining order shall be accompanied by a certificate of the applicant's attorney, or by an affidavit, or by other proof satisfactory to the court, stating (1) that actual notice of the time of making the application, and copies of all pleadings and other papers filed in the action to date or to be presented to the court at the hearing, have been furnished to the adverse party's attorney, if known, otherwise to the adverse party; or (2) the efforts made by the applicant to give such notice and furnish such copies. Except in an emergency, the court will not consider an ex parte application for a temporary restraining order. Amended June 26, 2004 and June 28, 2002.

If it helps the Court, the Plaintiffs seek oral argument on the instant motion under LR78.1.[2] The Court may enter the restraining order without a hearing. Yet, for the sake of transparency, given the amount of public interest in the case, the Plaintiffs feel like they should request it. There has been packed out town hall meetings, letters written by a coalition of Pastors in Lafayette spearheaded by the Louisiana Family Forum, and 17,000 signatures on a petitions generated by the Lafayette Citizens Against Taxes to stop the Lafayette Library from hosting the Drag Queen Story Hour in the children's division of the public library. Likewise, there has been hundreds of people showing support for the event who are aligned with the church of Secular Humanism. Since these are matters that fall within the area of the First Amendment Establishment Clause and Free Exercise Clause, these matters are best resolved before an Article III Court.

Furthermore, oral argument may be in order because this is not just a silly case about a silly event by silly librarians who lack the objective ability to know the difference between right and wrote, real and fake, and secular and non-secular. No indeed! The Plaintiffs are moving in force with the state and federal legislatures to ensure that all 50 states and the Federal government totally get out of the parody marriage business and that they competely disentangle themselves with the LGBTQ in every capacity forever and always as the First Amendment Establishment Clause commands. The government's endorsement of LGBTQ ideology predicated on the unexamined assumption of the superiority of our cultural moment as proven to be a complete and total disaster.  Under the Obama Presidency, the Judiciary's decision to entangle the government with the LGBTQ church has constituted the greatest non-secular sham since the inception of American jurisprudence.  While gay marriage is fake marriage, the government's unconstitutional endorsement of parody marriage has erode fundamental rights that are real and sacred. By filing this case, the Plaintiffs are zealously defending the integrity of

---

[2]  Motion Days Each judge shall designate a particular day or days as motion day. On this day priority shall be given to the presentation of motions. Motions may also be designated for hearing at some other time by order of the judge to whom the action is allotted. On motion day, the court may also consider reviews from magistrate judges' rulings, contradictory motions requiring action by the court after hearing and other matters required by law or court order to be heard and determined summarily. Oral argument will be allowed only when ordered by the court. All other motions will be decided by the court on the basis of the record, including timely filed briefs and any supporting or opposing documents filed therewith.

the 1964 civil rights movement lead by Pastor Martin Luther King Jr. and the integrity of the Fourteenth Amendment. This is not a case to be taken lightly. See marriagerestorationact.com.

## II. DEFENDING THE FREE EXERCISE RIGHTS OF SELF-IDENTIFIED TRANSVESTITES AND HOMOSEXUALS PURSUANT TO THE FIRST AMENDMENT

Before arguing against the Library hosting the Drag Queen Story Hour, the Plaintiffs pause to stipulate that they recognize, respect, and defend the right for any adult to express themselves and to self-identify as homosexual or transvestite as the Free Exercise Clause permits. Just as Jack Phillips, the owner of Masterpiece Cakeshop, and the Plaintiffs have the fundamental right to self-identify as Christ Followers, the members of a Fraternity in Louisiana have the right to self-identify as transvestites and homosexuals - even if doing so is objectively unwise. The Plaintiffs do not believe that self-identified homosexuals are second class citizens, but rather, they are people who are electing to lead a second class lifestyle. The Plaintiffs are not prohibitionists. They are not seeking to legislate morality. The Plaintiffs are not Democrats who think it is possible to legislative away the realities of the human heart - see the gun control debate. The Plaintiffs believe that there is a greater cure for heart transformation and redemption that government actors will never be able to provide. The Plaintiffs acknowledge Winston Churchill's position that "where there is a lot of free speech, there is a lot of stupid speech." However, the Coalition of pastors from Lafayette lead by Pastor Steve of First Baptist of Lafayette were correct: the time place and manner of the challenged speech in the instant case that was endorsed by government actors at the exclusion of competing views violates the Establishment Clause or in the alternative the Free Exercise Clause because the devout Secular Humanists at the Library are refusing to allow the other side of the issue to be presented because they are truth allergic. The Plaintiffs do not object on Constitutional grounds to the Drag Queen Story Hour being held at a private location, such as the fraternity house or at a coffee shop. However, given the time, place, and manner and the nature of the speech at issue, the Plaintiffs are effectively asking the Court to zone the Drag Queen Story Hour to a different location. Zoning ordinances are Constitutional. See *Los Angeles v. Alameda Books, Inc.,* 535 U.S. 425 (2002)[3] ( a case before the United States Supreme Court case on the controversial issue of adult

---

[3] If a person wants to build a strip club in Lafayette, they can. But the city can zone the strip club to the hard to reach parts of town. (see humantraffickingpreventionact.com tab "Law for Attorney Generals)

bookstore zoning in the city of Los Angeles. Zoning laws dictated that no adult bookstores could be within five hundred feet of a public park, or religious establishment, or within 1000 feet of another adult establishment was upheld as Constitutional.) Just as it would be inappropriate for an adult dancer who self-identifies as "CoCo" from Paradise Gentlemen's Club Strip in Lafayette to host "Stripper Story Hour" in a the children's division of the public library in an effort to persuade minors that being a stripper is a plausible way of life, it is unlawful for the public Library to host "transvestite story hour" in the children's division of the Library because it is involves speech that is not age appropriate.

### III.  EXCUSABLE DELAY IN FILING

The Plaintiffs were required to file a separate request for a temporary restraining order along with their complaint under LR65.1.[4]  The delay in filing is excusable for three reasons. First, the delay in filing was understandable because the Plaintiffs assumed that the City Counsel would pass a resolution R-062-2018 on September 17 to stop the Drag Queen Story Hour from going forward as a matter of common sense and elementary leadership.[5]

The Plaintiffs assumed that the Lafayette City Counsel would act like the city counsel in *City of Cincinnati v. Adams*, 42 Ohio Misc. 48, 52, 330 N.E.2d 463, 466, 71 O.O.2d 455 (Mun. 1974) that thwarted "criminal scheme" created by transvestites, since the evidence shows that the planned transvestite exhibition in the children's library is unlawful under La. Stat. Ann § 14:91.11.[6]

Second, the fact that Defendant Elberson was served with a petition with 17,000 signatures from the Lafayette Citizens Against Taxes compelled the Plaintiffs assumed that the

---

[4] The Plaintiff filed an amended complaint (DE 4) and filed corrected documents to make the complaint verified.
[5] R-062-2018 A resolution of the Lafayette City-Parish Council denouncing the Lafayette Public Library's approval of the program entitled "Drag Queen Story Time" as a Lafayette Public Library programmed event for children, ages 3-6. (Jared Bellard and William Theriot). The Special Forces Of Liberty and Warriors For Christ assume that the Pastors who are affiliated a with the Louisiana Family Forum have clout with other city leaders.
[6] In *City of Cincinnati v. Adams*, 42 Ohio Misc. 48, 52, 330 N.E.2d 463, 466, 71 O.O.2d 455 (Mun. 1974), the court stated: "City council's effort to thwart criminal schemes before they mature into an attempt is, indeed, commendable although the propriety of criminalizing cross-dressing in view of contemporary clothing and hair styles common to both sexes is debatable, *People v. Simmons*, supra. Particularly apparent is the fact that absent this ordinance the conduct of a transvestite remains subject to statutes or ordinances prohibiting soliciting (R.C. 2907.24), importuning (R.C. 2907.07), pandering obscenity (R.C. 2907.32), public indecency (R.C. 2907.02), trespassing (R.C. 2911.21) or soliciting rides or hitchhiking (R.C. 4511.51)

Library would cancel the event, since the Librarians are beholden to the taxpayers since their salaries are funded by them.

Third, the Plaintiffs were delayed in filing the lawsuit because the Mayor had indicated to the public that he would stop the Drag Queen Story Hour from being hosted at the children's library.[7] The Mayor has the authority to shut down the Drag Queen Story Hour under La. Stat. Ann. § 25:214.[8] As the Chief Executive Officer of the City, the Mayor has a duty under Article VI to shut down the Drag Queen Story Hour, as does this Honorable Court.[9] As members of the Special Forces of Liberty, Warriors For Christ, and De Facto Attorney Generals, in dealing with President Trump on issues of Human Trafficking and Child Exploitation, the Plaintiffs have become used to executives delivering on promises in an effort to make America great again. (see humantraffickingpreventionact.com). This new custom caused the Plaintiffs to delay for good cause shown. The Plaintiffs are asking this Honorable Article III Court to make America Great again by making America a Constitutional Republic again. The Plaintiffs are pushing for a nation where Secular Humanists in government are no longer allowed to monkey with the Fourteenth Amendment and where the Establishment Clause is enforced against the government's efforts to dignify the truth claims of non-institutionalized religions. As soon as it became clear to the Plaintiffs that the Counsel might not pass and that the Mayor was unsure if he had the proper legal basis to stop the Drag Queen Story Hour, the Plaintiffs filed the instant case before this Article III Court seeking Constitutional relief under Federal Question jurisdiction. The Court has supplemental jurisdiction over the Plaintiffs state law claims.

## VI. <u>NOTICE OF HEARING</u>

---

[7] https://www.nola.com/arts/index.ssf/2018/08/drag_queens_library_lafayette.html

[8] La. Stat. Ann. § 25:214 states: The governing authority of the municipality shall, in the ordinance creating a public library, name and appoint five citizens of the municipality as a board of control for such public library to serve for terms of one, two, three, four, and five years, the successors of whom shall each be appointed for a term of five years. The mayor of the municipality shall be ex officio, a member of the board of control of such public library, provided however that he shall have the right to designate another member of the governing authority of the municipality to serve in his place and stead on the board of control of such public library.

[9] This Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding.The Senators and Representatives before mentioned, and the members of the several state legislatures, and all executive and judicial officers, both of the United States and of the several states, shall be bound by oath or affirmation, to support this Constitution.

The Plaintiffs' service of process agent served the Defendants under FRCP 4 on September 24, 2018. Given the amount of international media attention directed at this lawsuit, there is no chance that the Defendants are unaware of the action pending against them and the nature of the relief sought. The complaint was made public by a litany of media outlets.[10] Furthermore, the Defendants are well aware that this is a matter of immense public concern because it involves protecting children from the normalization of false permission giving beliefs about sex, from rape by trick, and from sexual exploitation. This case also involves restoring Constitutional order by requiring the Defendants to completely and totally disentangle from the LGBTQ church which continues to seek to entangle the government with their faith-based and irrational religious ideology. The Librarians are expected to know how to read, they are expected to have read the Constitution. The Plaintiffs have made calls to the City's legal affairs office through the Mayor's office to notify the Defendants of the Plaintiffs intention to seek an temporary restraining order.   The Defendants have been served with countless complaints at the service desk by affiliates of Special Forces of Liberty and Warrior For Christ in accordance with the Library's guidelines prior to and after the filing of this lawsuit.

## V. STATEMENT OF RELEVANT FACTS

The matter presents as an emergency.  In July 2018, the head Children's library at the Lafayette public library took the initiative to invite and entice sexually confused college students, who self-identify as transvestites, to host "Drag Queen Story Hour" for children in the children's section of the public library.  In view of a FOIA request, the event was the idea of the Children's Librarian, who falls under the authority of the Defendant Elberson. According to the Library's public website,  the Library itself is running and promoting the event - http://lafayettepubliclibrary.org/?p=36235. The Library's guidelines and policies state that "Groups reserving the meeting room shall not imply Library endorsement or sponsorship of their objectives, views, or events in promotion or invitation." The Library is not following its own guidelines and policies when it comes to the Drag Queen Story Hour.[11]  In view of a FOIA request, the books that were chosen to be read by biological males dressed up as females were

---

[10]https://katc.com/news/around-acadiana/lafayette-parish/2018/09/20/anti-lgbt-group-goes-to-court-to-stop-drag-queen-story-time/
[11]http://lafayettepubliclibrary.org/wp-content/uploads/2010/01/Library-Meeting-Room-Guidelines-12-15-08.pdf

selected by the Children's Librarian.  The books selected amount to propaganda calculated to promote the religion of Secular Humanism, i.e. postmodern western moral relativism and expressive individualism and to encourage minors to be sexual and gender confused.  The event seeks to seduce minors into cultivating sympathy for the LGBTQ lifestyle through sexually suggestive innuendo crafted to entice children to subscribe to a worldview on sexuality that bucks common sense.  Neither the self-identified transvestites or their partners at the Library are the guardians or parents of the children who are expected to attend the obscene exhibition in the children's division.  The Children's Library is a taxpayer funded facility. Pastor Penkoski and other Plaintiffs asked if they could host a rebuttal to the Drag Queen Story that reflected the Christian worldview on the merits of homosexual ideology and the religion of Secular Humanism. That is, Pastor Penkoski and the other Plaintiffs sought to share a rebuttal position in the same place for the same amount of time that the self-identified transvestites were given and to potentially the same audience and anyone else who elected to opt-in. The Library denied the Plaintiffs' request, before the Plaintiffs were even permitted to complete the full application process. The Plaintiffs asked for permission to host a Bible Study for adults at the Library at any other time, the Library denied the request. Underscoring the arbitrary hypocrisy of the Library, Plaintiff Sevier asked the Library if he could summarily host an Objectophile Story Hour for minors in the children's division at a later date.  His request was denied even before he was permitted to submit the request fully. Plaintiff Sevier offered to allow the Children' librarian to select the books for the reading.  His request was still denied.  Plaintiff Gunter asked if he could host a Polygamy Story Hour at the children's library. He offered to allow the Children's librarian to select the books. The Library denied the request. The Plaintiffs have provided into the record sworn testimonies from ex-gays, medical professionals, persecuted Christians, and licensed ministers all of whom have testified under oath that there is no evidence of a gay gene, that the idea that sexula orientation is predicated on immutability is not proven, and that sexual orientation is a mythody, a dogma, and a doctrine that is inseparably linked to the religion of Secular Humanism.  (DE 7 Lisa Boucher ¶¶ 1-10; DE 17 Quinlan ¶¶ 1-37; DE 14 Pastor Cothran ¶¶ 1-50; DE 16 Dr. King ¶¶ 1-20; DE 15 Dr. Cretella ¶¶ 1-20; DE 10 Goodspeed ¶¶ 1-20; DE 9 Grace Harley ¶¶ 1-25; DE _Kohl ¶¶ 1-12; DE 12 Pastor Cuozzo;  ¶¶ 1-21; DE 13 Pastor Farr ¶¶

1-33; DE 18 Pastor Penkoski ¶¶ 1-34; DE 11 Pastor Cairns ¶¶ 1-30;; DE 8 Christian Resistance ¶¶ 1-21; DE _ Special Forces Of Liberty ¶¶ 1-34)..The Plaintiffs complained to the Library that the event violated the Establishment Clause because the Library was excessively entangling itself with the religion of Secular Humanism.   Since the filing of this lawsuit, the Plaintiffs have called the Mayor, the Library, and the city attorney's office to make them fully aware of this case. On 24, 2018, the Plaintiffs service of process agent served the library under FRCP 4. The Plaintiffs are asking that this Honorable Court issue an temporary restraining order to enjoin the Drag Queen Story Hour from going forward until these matters are fully adjudicated.  The Library was served with a petition from the Lafayette Citizens Against Taxes. Nearly 50 pastors organized by Gene Mills of Louisiana Family Forum pressed the city counsel into introducing a resolution that would shut down the Story Hour for eroding community standards of decency and because it amounts to an obscene exhibit that is injurious to minors in violation of La. Stat. Ann § 14:91.11. In response to filing this lawsuit, the Plaintiffs have been stalked, threatened, libeled, and harassed by self-identified transvestites, self-identified homosexuals and dozens of their fellow sympathizers who are advocates for the government's entanglement with the religion of Secular Humanism.  Perhaps the Court should conduct an entire hearing on that so that it can fully appreciated just how great of a sham the government's endorsement of LGBTQ orthodoxy truly is.

## VI.  **STANDARD OF REVIEW**

A temporary restraining order is a "highly accelerated and temporary form of preliminary injunctive relief." *Cockrum v. Carter*, No. CIV.A. 13-5329, 2014 WL 1330185, at *3 (E.D. La. Apr. 3, 2014). Thus, the standards are substantively similar. *Id.*; See also Fed.R.Civ.P. 65(a) and (b). To obtain a temporary restraining order, in particular, the movant must allege specific facts in a verified complaint that clearly shows immediate and irreparable loss or damage. Fed.R.Civ.P. 65(b). The court treats the well-pleaded allegation of a verified complaint as true. *See In re Fuselier*, No. 09-11536, 2010 WL 231739, at *1 (Bankr. E.D. La. Jan. 13, 2010).

This Court may exercise its discretion to grant a temporary restraining order/ preliminary injunction when a plaintiff shows: (1) based upon a prima facie case that there is a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer

irreparable injury if the injunction is not granted, (3) the threatened injury to plaintiff outweighs

the threatened harm the injunction may do to defendant, and (4) the granting of a preliminary

injunction will not disserve the public interest. *Enterprise Intern., Inc. v. Corparcion Estatal*

*Petrolera Ecuatoriana*, 762 F.2d 464, 471 (5th Cir. 1985); *Canal Authority of the State of*

*Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974); *Cheneau v. Bank of Am.* NA, No. CV

14-0384, 2015 WL 12564181, at *1 (E.D. La. Oct. 9, 2015).

In order to obtain injunctive relief, a plaintiff needs only to present sufficient evidence to

establish a *prima facie* case such that a court can find that it is likely to succeed on the merits.

*Meis v. Sanitas Serv. Corp.*, 511 F.2d 655, 656 (5th Cir. 1975). A *prima facie* case does not mean

that the plaintiff is entitled to summary judgment. *Janvey v. Alguire*, 647 F.3d 585, 595– 96 (5th

Cir. 2011). Rather, the plaintiff needs only to present evidence of its substantial likelihood to

succeed on the merits. *Id.*

## VIII.  ARGUMENT

### A.  LIKELIHOOD OF SUCCESS

#### *(1) Targeting Minors WIth Indoctrination Through The Use Of Government Assets Constitutes Excessive Endorsement And Excessive Entanglement*

All technical arguments aside about the Library's refusal to comply with its own

guidelines when it comes to Drag Queen Story Hour, the real reason why the Plaintiffs are likely

to  prevail in enjoining the self-identified transvestites from misusing using the children's public

library to put on an obscene exhibit that is unlawful under La. Stat. Ann § 14:91.11 is because

this case involves devout Secular Humanist adults who are misusing government assets and the

perception of the government's stamp of approval to indoctrination three to six year olds under a

religious worldview on sex, faith, marriage, and morality that is totally non-secular and bucks

common senses.  Homosexual orthodoxy fails to check out with the human design and the way

things are. Homosexual and transvestite dogma is self-evidently obscene, immoral, and

subversive to human flourishing on top of being completely non-secular.  Homosexuality is a

religious worldview that is objectively perverted and immoral just like rape by trick is. The

United States Supreme Court has emphasized that there are "heightened concerns with protecting

freedom of conscience from subtle coercive pressure in the elementary and secondary public

schools," *Lee v. Weisman*, 505 U.S. 577, 592 (1992), and the federal courts have thus "been particularly vigilant in monitoring compliance with the Establishment Clause" in the public-school context, see *Edwards v. Aguillard*, 482 U.S. 578, 578-583 (1987).  It follows that "heightened concerns" apply here to the Lafayette children's library, which is a public taxpayer funded building, just like elementary schools are, with librarians whose salaries are paid for by the taxpayers, just like public elementary teachers are. The real reason why the self-identified transvestites are not interested in having the Drag Queen Story Hour at a private location is because the whole point of the event is to community to impressionable minors that the government approves of a sexual lifestyle that was basically illegal until 2003 when *Lawrence v. Texas*,  539 U.S. 558 (2003) overturned *Bowers v. Hardwick*,  478 U.S. 186 (1986).  What the government's endorsement of homosexuality has really accomplished is that it has plunged Secular Humanists into a further state of intellectual darkness and entitlement to the point that they are becoming more violent, more irrational, and more self-entitled. See ANTIFA. The government's decision to endorse LGBTQ orthodoxy has not generated tolerance and unity because the entire objection is based on dominance. The fact is that homosexual practices, i.e. bugary, remains a part of nearly every obscenity code in every state.  The self-identified transvestites are misusing an invalid and unconstitutional government endorsement of Secular Humanist orthodoxy to seduce minors into buying into the the merits of an implausible non-secular ideology in order for adults to explain away their own natural feelings of shame and inadequacy that stem from putting self-destructive Secular Humanist principles into practice. The entire event is patently vular. "We indeed live in a vulgar age" and the Library seeks to make it worse by allowing self-identified transvestite college students to indoctrinate minors. *Lee v. Weisman*, 505 U.S. 577 (1992).  The entire operation amounts to government authorizing men pretending to be women to groom children for future sexual exploitation by members of the same-sex. It warrants prosecution by the District Attorney's office. And even if desentize people who think they are progressive disagree, what is beyond dispute is the fact that the self-identified homosexuals intend to preach a non-secular gospel narrative to minors at an event that (1) was Children's Librarian's idea,[12] that (2) the Library promoted at the exclusion of competing

---

[12] Email from the Children's Librarian: "Subject: quick note: Date: Sunday,July 1, 2018 at 5:43:42 PM Central Daylight Time From: Meredith Crawford To: Sarah Durr, Angela Criddle Category: DQST:  a young man with the

religious worldviews, and that (3) involve tangible works that were selected by the Librarians knowing that they constitute a form of propaganda for the religion of Secular Humanism.  These facts constitute per se excessive endorsement and government entanglement with the religion of Secular Humanism in violation of the *Lemon* Test. "To pass muster under the Establishment Clause, a practice must satisfy the *Lemon* test, pursuant to which it must: (1) have a valid secular purpose;[12] (2) not have the effect of advancing, endorsing, or inhibiting religion;[13] and (3) not foster excessive entanglement with religion." See *Lemon v. Kurtzman*, 403 U.S. 602 (1971). Government action "violates the Establishment Clause if it fails to satisfy any of these prongs." *Edwards,* 482 U.S. at 583; *Agostini v. Felton*, 521 U.S. 203, 218 (1997). This Honorable Court should issue a restraining order because the Defendant's actions fail all three prongs of *Lemon*. The United States Supreme Court has already recognized that Secular Humanism is a religion for the purposes of the First Amendment Establishment Clause in *Torcaso v. Watkins*, 367 U.S. 488, n. 11 (1961) and re-acknowledged in *Edwards v. Aguillard*, 482 U.S. 578 (1987).  See also *Washington Ethical Society v. District of Columbia,* 101 U.S. App. D.C. 371, 249 F.2d 127 (1957); 2 Encyclopaedia of the Social Sciences, 293; J. Archer, Faiths Men Live By 120—138, 254—313 (2d ed. revised by Purinton 1958); Stokes & Pfeffer, supra, n. 3, at 560. *Welsh v. U.S,* 1970 398 U.S. 333 (U.S. Cal. June 15).[13] And even if this Court were to feel that those prior

---

new LGBT fraternity on campus came to visit to do some community fun with us at the library. i suggested maybe once a semester and either a storytime (drag queen or something tamer) or something where they could mentor like a code club or something like that. they were down, I have his email, but I thought that I would run that all by y'all first and see what you think. better ideas? I'm totally down for once a semester p.j. party with these frat boys. I don't see a tuesday talk coming down the pike, so here it is! Meredith Crawford, Children's Librarian, 337-261-5774 Lafayette Public Library Lafayette, Louisiana"

[13] *Real Alternatives, In c. v. Burwell*, 150 F. Supp. 3d 419, 440–41 (M.D. Pa. 2015), aff'd sub nom. *Real Alternatives, Inc. v. Sec'y Dep't of Health & Human Servs.*,No.16-1275, 2017 WL3324690 (3d Cir. Aug. 4, 2017). In *Real Alternatives,* the court stated: "We detect a difference in the "philosophical views" espoused by [the plaintiffs], and the "secular moral system[s]...equivalent to religion except for non-belief in God" that Judge Easterbrook describes in *Center for Inquiry*, 758 F.3d at 873. There, the Seventh Circuit references organized groups of people who subscribe to belief systems such as Atheism, Shintoism, Janism, Buddhism, and secular humanism, all of which "are situated similarly to religions in everything except belief in a deity." *Id.* at 872. These systems are organized, full, and provide a comprehensive code by which individuals may guide their daily activities. Instead having a cross or the ten commandments, the LGBTQ church has the gay pride flag and their own commandments, such as if you disagree with LGBTQ ideology you are a bigot worth marginalizing. The unproven naked truth claims evangelized by the LGBTQ church such as (1) there is a gay gene, that (2) people can be born in the wrong body, that (3) same-sex sexual activity checks out with the human design, that (4) same-sex buggery is not immoral, and that (5) people come out of the closest baptized gay consists of a series of unproven faith based assumptions that are hyper religious and take a huge amount of faith to believe are even real, since these truth claims buck common sense and are more likely than not shallow qualifiers hoping to justify immoral sexual conduct that is indecent, immoral, and questionably legal.

findings by the high courts did not cut it, the Court is hereby notified that a majority of legislative bodies will introduce a resolution that resolves that Secular Humanism is a religion for the purposes of the First Amendment Establishment Clause at the 2019 legislative session. This Court can take notice of legislative facts. *Landell v. Sorrell*, 382 S3d. 91 (2nd Cir. 2004);; *Lebron v. Secretary of Florida*, 772 F3d 1352 (11th Cir 2014);; *Brand v. Motley*, 526 F3d 921 (6th Cir. 2008).   In terms of evidence, the testimonials submitted by the Plaintiffs that are lodged into the docket by ex-gays, medical experts, persecuted Christians, and licensed ministers insurmountably demonstrate that the dogma that the self-identified transvestites and their librarian counterparts intend to preach to three to six year olds at the Children's Library on October 6, 2018 is predicated on a series of unproven faith-based assumptions and naked assertions that are inseparably linked to the religion of Secular Humanism.  (DE 7 Lisa Boucher ¶¶ 1-10; DE 17 Quinlan ¶¶ 1-37; DE 14 Pastor Cothran ¶¶ 1-50; DE 16 Dr. King ¶¶ 1-20; DE 15 Dr. Cretella ¶¶ 1-20; DE 10 Goodspeed ¶¶ 1-20; DE 9 Grace Harley ¶¶ 1-25; DE _Kohl ¶¶ 1-12; DE 12 Pastor Cuozzo;  ¶¶ 1-21; DE 13 Pastor Farr ¶¶ 1-33; DE 18 Pastor Penkoski ¶¶ 1-34; DE 11 Pastor Cairns ¶¶ 1-30;; DE 8 Christian Resistance ¶¶ 1-21; DE _ Special Forces Of Liberty ¶¶ 1-34). See Amicus Briefs of the Center For Garden State Families; the WW Bridal and the American Family Association of PA; National Alliance of Black Pastors; and the Coalition of Doctors Defending Reparative Therapy.

Even if by way of a miracle this watertight argument that is based on the facts and the law was to be ignored by this Court - which would only serve to tick off  the legislative branch and provoke a massive legislative response by the Judiciary committees - the Library violated the First Amendment by refusing to allow Pastor Penkoski and the other Plaintiffs to give a rebuttal position that call into question the plausibility of the religious ideology that the self-identified transvestites and their librarian counterparts feel is morally superior because the philosophers at MTV and cultural leaders like Lady Gaga said so.

### (2) *Public Government Forum v. Private Government Forum*

It has never been litigated before whether a Children's library is a public forum or a private forum. The Library needs to be temporarily restrained until the kind of forum is resolved. "In limited public and nonpublic forums, a government entity may impose restrictions on speech

that are reasonable and viewpoint neutral." *Ortega v. Recreation & Parks Comm'n for Par. of E. Baton Rouge*, 2018 WL 3471890, at *3 (La. App. 1 Cir. 7/18/18). If the "government has intentionally designated a place or means of communication as a public forum, speakers cannot be excluded without a compelling governmental interest. Access to a nonpublic forum, however, can be restricted as long as the restrictions are 'reasonable and [are] not an effort to suppress expression merely because public officials oppose the speaker's view.' Id., at 46, 103 S.Ct., at 955." See *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 800, 105 S. Ct. 3439, 3448, 87 L. Ed. 2d 567, 53 USLW 5116 (1985)

If the Library is a non-public forum, like a public school, then because the exhibition at issue is based on emotional appeals that is nothing more than a mask for government sanctioned religious indoctrination of minors the reasoning in *Holloman v. Harland,* 370 F.3 1252 (11th Cir. 2004)[14] should compel the Court to stop the event from being held permanently.  However, if the Court determines that the Children's public library is a "public forum," the Library's decision to prevent Pastor Penkoski and the other Plaintiffs from giving a rebuttal to the transvestite story hour based on Christian values violates the First Amendment under the Free Speech, Freedom of Assembly, and Free Exercise Clause. The government has a compelling interest to allow both sides of an issue to be discussed in public forums. But the fact that the target audience of  Drag Queen Story Hour involves children in a government designated children's forum changes things.  The Children's Library is not likely a public forum, but another part of the Library might qualify as a public forum perhaps. But these matters are not settled and the issuance of a temporary restraining order by this Honorable Court is proper until they are.

---

[14] In *Holloman,* a public school teacher defended a daily moment of silent prayer by arguing that she intended to teach students compassion, pursuant to a character education plan mandated by the State. Id. at 1285. The court concluded that this emotional explanation did not constitute a valid secular purpose because the teacher's most basic intent unquestionably was to offer her students an opportunity to pray.  "While [the teacher] may also have had a higher-order ultimate goal of promoting compassion, we look not only to the ultimate goal or objective of the behavior, but also to the more immediate, tangible, or lower-order consequences a government actor intends to bring about." Id. The unmistakable message of the Supreme Court's teaching in *Holloman* is that the state cannot employ a religious means to serve an otherwise legitimate secular interests." Id. at 1286. The *Holloman* court further concluded that "a person attempting to further an ostensibly secular purpose through avowedly religious means is considered to have a Constitutionally impermissible purpose." Id., citing *Jagar v. Douglas County School*, 862 F.2d 824, 830 (11th Cir.1989).("An intrinsically religious practice cannot meet the secular purpose prong of the *Lemon* test.")

In *Concerned Women for Am. Inc. v. Lafayette Cty.*, 883 F.2d 32, 1989 WL 98882 (5th Cir. 1989), in step with an animus held towards Christians, the Lafayette public library refused to allow a group of Christian women to use the auditorium for a meeting place. The case involved women, who were adults, who were already part of the same group, who self-identified as Christ Followers, and who already shared the same common values and beliefs in the supremacy of Jesus Christ. [15]  The members of Concerned Women For America were not seeking to have

[15]In this first amendment civil rights action, Concerned Women for America ("CWA") and Jolene Cox, its Mississippi representative, sought declaratory and injunctive relief against the Lafayette County and Oxford Public Library because of its refusal to allow a CWA Prayer Chapter the use of its auditorium. On appeal, we are asked to consider whether the district court erred in concluding that the library had created a public forum, rather than a limited public forum, by allowing various community groups to hold their meetings in its auditorium, and thus erred in granting the injunction. 699 F.Supp. 95. The following is Lafayette County Oxford Library's only written auditorium policy: The Auditorium of the Oxford branch of the First Regional Library is open for use of groups or organizations of a civic, cultural or educational character, but not for social gatherings, entertaining, dramatic productions, money-raising, or commercial purposes. It is also not available for meetings for social, political, partisan or religious purposes, or when in the judgment of the Director or Branch Librarian any disorder is likely to occur. In order to gain access to the auditorium, a group must obtain permission from Dorothy Fitts, the head librarian. Although the library contends that its policy was to open the auditorium only to groups meeting for artistic or educational purposes, Fitts testified at the hearing on CWA's motion for a preliminary injunction that once she determined that a group would not be meeting for a religious or political purpose, and that there was room on the calendar, she would grant the group permission to use the auditorium. The library has in the past been consistent in denying religious and political groups use of the auditorium. In June 1988, Jolene Cox requested to use the auditorium for a CWA Prayer Chapter meeting. At these meetings, CWA members discuss family and political issues, pray about those issues, and seek to apply Biblical principles to them. Some CWA meetings also include guest lectures on specific topics. Fitts denied Cox's request, stating that such a meeting would violate library policy because the CWA was a group with religious purposes. CWA and Cox filed a complaint for declaratory and injunctive relief against the library, arguing that its actions violated their constitutional rights to free speech, freedom of assembly, free exercise of religion, and equal protection of the laws. After a hearing, the district court found that the library, by opening up in the past to groups "hav[ing] little to do with the Library's educational and artistic mission," had created, perhaps "unwittingly," a public forum from which it could not now restrict access based upon the content of a group's meeting. Accordingly, the court granted CWA's preliminary injunction, enjoining the library from refusing to allow CWA to meet in the auditorium. The library appeals from that order. Our standard of review for the grant of a preliminary injunction is "whether the issuance of the injunction, in the light of the applicable standard, constitute[s] an abuse of discretion," *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 932, 95 S.Ct. 2561, 2568, 45 L.Ed.2d 648 (1975). A preliminary injunction will issue if the movant establishes (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest. See *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir.1987). The parties' dispute in this case is over the first requirement--likelihood of success on the merits. In reviewing the district court's grant of an injunction for an abuse of discretion, we must uphold the court's findings of fact unless they are clearly erroneous. *Gearhart Indus. v. Smith Int'l, Inc.*, 741 F.2d 707, 710 (5th Cir.1984). The conclusions of law underlying the court's decision to grant a preliminary injunction are subject to independent review. *In re Fredeman Litigation,* 843 F.2d 821, 824 (5th Cir.1988). Reduced to its essence, the library's argument is that the district court erred in concluding that the auditorium was a public forum; at most, through its policy and practice, the library created a limited public forum. The library maintains that because it has never before granted access to religious or political groups similar to the CWA, its exclusion of the CWA now from use of the auditorium does not transgress the first amendment. In this case, the relevant facts are undisputed. The library has allowed the following groups, among others, to use the auditorium: (1) American Association of

meeting that targeted children, where the children's librarian was picking out the books, calling the shots, and ignoring the guidelines.  In meeting in the auditorium of the Library, the Concerned Women for America members planned to "discuss family and political issues, pray about those issues, and seek to apply Biblical principles to them. Some CWA meetings also include guest lectures on specific topics." The Lafayette Library denied the request, stating that such a meeting would violate library policy because the CWA was a group with religious purposes, while failing to understand that the Library itself had reduced itself to a a group with religious purposes - to promote the government's entanglement with the religion of Secular Humanism.  The court enjoined the Lafayette Public Library in that case because it found the auditorium to be a public forum and that CWA's free exercise rights were violation. Therefore, if the Children's Library section is a private government forum, then transvestite story hour cannot go forward because it violates the Establishment Clause; yet, if the Children's Library is a public forum, the Library must be required to allow Pastor Penkoski and the other Plaintiffs to provide a rebuttal position to the one floated by the self-identified transvestites and their librarian counterparts.  Either way, the Court should issue the temporary restraining order until these

---

University Women (panel discussion on women in non-traditional occupations); (2) National Association of Retired Federal Workers (potluck luncheon and lecture on Alzheimer's disease); (3) U.S. Navy (closed meeting of area recruiters to discuss recruiting strategies); (4) United Way (discussion of funding requests and the organization's budget); (5) American Legion (regular post meeting); (6) Adult Program on AIDS (meeting on the topic of AIDS); and (7) Oxford Swim Club (general meeting at which members discussed rules and policies for their pool). The library also gave permission for a young girl to use the auditorium for her piano recital. The narrow legal question before us is whether, by allowing these various groups to hold their meetings in the library auditorium, the library has created a public forum, and therefore must now allow access to other groups whose meetings have political or religious content, such as CWA. We agree with the district court's holding that CWA has shown a substantial likelihood of proving that the library has created a public forum by allowing diverse groups to use its auditorium. It is an elementary rule that the government may not exclude speech on the basis of its content from either a traditional public forum or a forum created by government designation, unless the exclusion is necessary to serve a compelling state interest which cannot be served by a less restrictive action. *Cornelius v. NAACP Legal Defense & Educ. Fund,* 473 U.S. 788, 803, 105 S.Ct. 3439, 3449, 87 L.Ed.2d 567 (1985). There is no evidence that CWA's meeting would disrupt or interfere with the general use of the library. Should the contrary prove to be true, library officials may respond by imposing reasonable time, place or manner restrictions on access to the auditorium, provided any regulations are justified without reference to the content of the regulated speech. See *Ward v. Rock Against Racism,* --- U.S. ----, ----, 109 S.Ct. 2746, 2753-55, 105 L.Ed.2d 661 (1989). Nor is the Establishment Clause implicated in this case. CWA's stated purpose is to preserve, protect, and promote traditional and Judeo-Christian values through education, legal defense, legislative programs, humanitarian aid and related activities. In the absence of empirical evidence that religious groups will dominate use of the library's auditorium, causing the advancement of religion to become the forum's "primary effect," an equal access policy will not offend the Establishment Clause. *Widmar v. Vincent,* 454 U.S. 263, 275, 102 S.Ct. 269, 277, 70 L.Ed.2d 440 (1981).  Accordingly, for the same reasons set out in the district court's memorandum opinion, the district court's order enjoining the library from excluding CWA from use of the auditorium is AFFIRMED.

matters can be fully adjudicated.  Failing to do so will provoke a massive legislative responsiveness. See marraigerestorationact.com.

### (3)  According To An Assessment From Safe Libraries The Lafayette Public Library Is Not Following Its Own Guideline

The Plaintiffs asked Attorney Dan Kleinman of Safe Libraries,[16] who was commissioned by the powers that be to worked with the Special Forces Of Liberty on the Human Trafficking and Child Exploitation Prevention Act, to review the Library's conduct in light of their own guidelines. Attorney Kleinman is the Nation's leading expert on Libraries and the malicious conduct of the American Library Association, which is nothing more than a division of the American Civil Liberties Union.  To give credit where credit is due, this section of the Plaintiff's argument is based on Safe Libraries research. The Court must issue a temporary restraining order because the Library is not following its own guidelines.  The Library's guidelines and policies state that "groups reserving the meeting room shall not imply Library endorsement or sponsorship of their objectives, views, or events in promotion or invitation." Meanwhile,  the Lafayette Library's website shows and the information revealed by the FOIA request shows that the Library is running and promoting the event - http://lafayettepubliclibrary.org/?p=36235.  The evidence revealed from the FOIA requests shows that the event was the Libraries idea and that the Children's Librarian contacted the fraternity about putting on the exhibit. While  "the library also reserves the right to relocate a group to a different meeting room with in the facility," the Library has placed the Drag Queen Story Hour in the children's division of the library to maximize their efforts to target and indoctrinate minors to normalize an obscene lifestyle. The Guidelines state that "arrangements for tables and chairs must be made at the time of booking. Library staff is not available on site for changing room arrangements" but the Library is involved in creating the atmosphere and in selecting the reading materials to maximize the chance of indoctrinating minors to religious worldview that bucks common sense.  "Those who wish to use audiovisual equipment, including computers and projectors, must supply their own technical support," unlike library's support for Drag Queen Story Hour on October 6, 2018.

---

[16] http://safelibraries.blogspot.com/

The Library's fly and advertisements of Drag Queen Story Hour directly violate the Library's guidelines on "Bulletin Boards, Exhibits, and Displays Policy." The library's flyer that advertises Drag Queen Story Hour has on the front page, lower right, large, the registered trademark of the ALA, "Libraries Transform."[17] According to Attorney Kleinman's research the American Library Association has coerced the public library's mission to change from "literacy" to a focus on social justice issues that advance the interest of the Democratic party. Social justice is socialism injustice. It is per se fascism, and the fact is that SA Brown shirts were rife with homosexuality so let's not pretend there is not a seamless connection to the darkness complained of by the Plaintiffs. Notice what is not on the flyer: the use of the public meeting rooms by the public is not on the flyer. This is because the Library is not for free speech, it is for coercively imposing Secular Humanism on society due to a severe emotional problem with the truth. Had Drag Queen Story Hour been treated like anyone else using the public meeting rooms, they would not have gotten free advertising. Instead they would have been limited to the library's bulletin board policy which was not even tangentially complied with.[18] (See Exhibits). According to the Library's guidelines on bulletins, "materials, flyers, or posters which advocate the election or defeat of a candidate for public office, or which advocate an affirmative or negative vote for or against any proposition, whether political or otherwise, will not be posted." But by hosting the Drag Queen Story Hour, and promoting it on the Library's flyer, the Library knows that it is doing the bidding of the Democratic party and the church of Secular Humanism. The Democratic party is not merely the party of stunts it is more like a religious cult at this point. Look at what the Democrats in office have been doing to Judge Kavanaugh in conjunction with three phony accusers, and look at what they have done to Plaintiff Sevier, pretending that he is "incapacitated" an unable to practice law without a single shred of evidence that is true, which is nothing more than a calculated ploy just like the one used by Senator Elizabeth Warren, who

[17] http://lafayettepubliclibrary.org/wp-content/uploads/2009/12/BOOKTALK_sept_oct_2018_FINAL_w_Btw_Friends.pdf The flyer reads "Join us for an afternoon of books, songs and activities led by drag queens from UL Lafayette's fraternal colony of Delta Lambda Phi!" The Flyer shows this particular non-secular group gets a special boost over all others. Instead, the self-identified transvestites should have applied for the public meeting room, complied with all policies. Pastor Penkoski and the other Plaintiffs were undertaking steps to comply with the guidelines but the Library shut them down before they could get started because they are Christ Followers who believe that Bible is correct when it sets forth that homosexuality is evil and vile. The Library is favoring one religion over another in a manner that is unconstitutional.

[18] http://lafayettepubliclibrary.org/wp-content/uploads/2010/01/Bulletin-Boards-Exhibits-and-Displays-Policy.pdf

recently recommended that President Trump's cabinet invoke the Twenty Fifth amendment by pretending that he was incapacitated. Justice Kavanaugh, Plaintiff Sevier, and President Trump have all been targeted unjustifiably because Democrats in office in the United States Senate or who serve on the Tennessee Supreme Court feel entitled to engage in ends justify the means gaming tactics over religious and political differences.  It should be treated as criminal misconduct.

According to the Library's guidelines, "space for religious proselytizing or religious announcements and personal notices or communications will not be provided. The Library does not sponsor nor endorse the views of any individual or group using the exhibit and display spaces." According to the arguments made by Plaintiffs Sevier and Harley in their memorandums in support for summary judgment, the library is in direct violation of this policy. The guideline policies requires that "application for any exhibit or display must be submitted to the branch manager and approved at least one week (but not more than 6 months) in advance of the desired date. The application form must be signed and returned before approval will be considered." The Plaintiffs have demanded that the Library provide proof that guideline was satisfied by the self-identified transvestite college students but the Library has failed to do so because the evidence shows that the Library let it slide in step with its pattern to give special treatment to groups that are working to use government to indoctrinate minors to their asinine religious worldview. The Library in this case is not following its own guidelines because the Library employees are devout religious Secular Humanists who use their government capacity to give special treatment to other Secular Humanists who share the same moral superiority complex that they do, even though their worldview is objective irrational.

Beyond their refusal to comply with their own guidelines, the guidelines themselves are unconstitutional in-part. The guidelines state that "if a question is raised as to any group's use of the Meeting Rooms, the Lafayette Public Library Board of Control shall be the final authority." That is bogus.  That is like making the Board Of Professional Responsibility of the Tennessee Supreme Court in change of prosecuting and Judging Christian attorneys who refuse to advance the new orthodoxy promoted by the judicial branch.  The Federal Article III District Courts are the "final authority," not the jaded and braindead "Library Boards of Control" which is made up

of Secular Humanists who amount to checks who are in bed with the balance. The Library is unwilling to comply with its own policies because it has a religious and political agenda that is calculated to desensitize and indoctrinate minors with obscene displays. It is truly an evil that the Establishment Clause does not allow.

### B.  A SHOWING OF IRREPARABLE HARM FAVORS THE PLAINTIFFS

The Plaintiffs will be submitting comprehensive briefs on how they have taxpayer standing under the circumstances and how they have conferred subject matter jurisdiction onto the Court.  The Plaintiffs in this case have been violently and relentless persecuted by the LGBTQ community and their fellow Secular Humanist sympathizers - treated like second class citizens because they are Christ Followers.[19] In response to filing this lawsuit, for example, the Petitioner have been stalked, threatened, and libeled through media outlets across the globe. The amount of fake news published by the media concerning Plaintiff Sevier because the Board of Professional Responsibility of the Supreme Court in Tennessee[20] targeted him in the same way that Lois Lerner at the IRS targeted Christian conservatives is quickly becoming legendary. The evidence shows that self-identified homosexuals and transvestites are motivated by guilt and full of white hot hate that stems from the natural feelings of shame and inadequacy that comes from operating in a manner that violates the givenness of our nature and the truth about the way things are and the way we are designed. The Plaintiffs, their attorneys who are working to appear pro hac, and their family members have been bombarded with phone calls, emails, and text messages at all hours of the night by self-identified transvestites whose goal is to commit the crimes of harassment, obstruction of justice, and witness intimidation.[21]  The Plaintiffs acknowledge that freedom is not free and have no problem absorbing the abuse to shield children, to safeguard community standards of decency, to defend the integrity of the civil rights movement lead by

---

[19] Justin Net - a self-identified transvestite - has relentlessly called and contacted the Plaintiffs and their family members for filing this lawsuit. His phone number is (772) 529 0005. If this harassment continues, the Plaintiffs will move the Court to have the U.S. Marshals arrest him for witness intimidation and obstruction of justice. Law enforcement has provided the Plaintiffs with this suspects location for their safety.
[20] https://soundcloud.com/user-544518572/listen-to-lying-krisann-hodges-attempt-to-justify-her-political-targeting-at-the-bpr.
https://soundcloud.com/user-544518572/chris-sevier-bar-hearing-with-krisann-hodges-and-a-panel-involving-a-fake-case
[21]  If it continues the Plaintiffs will ask the Court to commission the U.S. Marshals to arrest individuals like Justin Net, who has made hundreds of unwanted phone calls to the Plaintiffs and their family members to punish them for asking the Court to enforce the Constitution against government actors.

pastor King, to restore the rule of law, and to stop the government from entangling itself with the religion of Secular Humanism.. As victims of unwarranted harassment, libel, slander, and assault, the Plaintiffs are deeply offended that the children's division of the Public Library, a taxpayer funded facility, is hosting the Drag Queen Story Hour for Children, just as a survivor of the holocaust would rightfully be outraged if the Children' Librarian was to up it a notch and allow Nazis to host a Hitler Youth recruitment rally for children in the children's division of the public library.

The Plaintiffs have a logical nexus to the Library to seek an injunction under the Establishment Clause for reasons set forth in the their declarations and other pleadings they have filed and will continue to file. Some of the Plaintiffs have Library cards and they use the Library to advance legislative agendas that have a secular purpose. Nevertheless, the bottomline is that "compelled taxpayer support of religious indoctrination cannot be justified on the basis that the participants are not coerced." The Establishment Clause, unlike the Free Exercise Clause, does not depend upon any showing of direct governmental compulsion and is violated by the enforcement of any policy that respects homosexual orthodoxy, whether the enforcement of the policies operate directly to coerce non-observing individuals of the religion of Secular Humanism or not. *Engel v. Vitale*, 370 12 U.S. 421, 430 (1962); *Holloman*, 370 F.3d at 1286; *Newdow v. Congress*, 292 F.3d 597, 607, n. 5 (9th Cir. 2002). The Plaintiffs do not have to have to actually be coerced directly to stop government actors from misusing their authority to target minors with religious indoctrination in a public building that they use for legislative affairs in the effort to stop human trafficking, child exploitation, and the erosion of the Supremacy of the United States Constitution by Secular Humanists who are currently too brainwashed by culture to objectively understand the differences between right and wrong, real and fake, and secular and non-secular.

As taxpayers, the Plaintiffs do not want the Children Librarians setting out to recruit groups that preach Secular Humanism in a taxpayer funded building because the Plaintiffs believe that it is a religious worldview that is objectively subversive to human flourishing. The Plaintiffs object to the Children Librarian's decision to pick out the books for the transgender exhibit that were calculated to prosthelytize minors. The fact that the Plaintiffs are working with

the Louisiana state legislature to pass the Admission Act and the Human Trafficking and Child Exploitation Prevention Act, the fact that those bills will generate millions of dollars in tax revenue for the state, and the fact that Plaintiffs are proactively involved in defending community standards of decency and in protecting children from being groomed for sexual exploitation, gives the Plaintiffs a logical nexus to ask this Honorable Court to enforce the Establishment Clause of the United States Constitution against the children's librarian at the Lafayette Public library. Alternatively, if the Court were to allow the transvestite story hour to go forward, the Plaintiffs will be sustaining a Constitutional injury of a different kind because the Library is not allow the opposing view to be offered because the employees of the library have an animus towards people who have the common sense and humility to believe in absolute truth. Either way, the Court should issue a temporary restraining order in the interest of justice. The Librarians are far too intellectually incompetent to understand that when self-identified Drag Queens suggest to children that no one set of moral doctrine should be used as a superior basis to make decisions about who to have sex with that such an assertion is itself a moral doctrine that is asserting itself as the superior basis to make such a determination. The Library is not promoting literacy, it is advocating for non-secular lunacy due to an epic truth allergy that makes the Lafayette public library come across as completely untrustworthy.

## C. BALANCE OF EQUITIES FAVORS THE ISSUANCE OF RESTRAINT ORDER

The threatened injury to Plaintiffs and the children they seek to protect from government sanctioned religious indoctrination outweighs any potential damage to the Library and the self-identified transvestite college students if this court grants the injunction sought.  The Library and the college students might actually learn something about the Constitution and valid functionality of the United States government.  A "temporary restraining" order is "temporary." This controversy is not like Judge kavanaugh's hearing were the question of "what's the rush" is malicious political ploy in the continued effort by Democrats to undermine the supremacy of the United States Constitution. The Plaintiffs are asking that the Court require the Children's Library hold the Drag Queen Story Hour in abeyance until these proceedings can be fully adjudicated.

Otherwise, the Library will have more in common with Constitutional scofflaws than with institutions that symbolize an effort to protect the rule of law.

*Injunction Against the Lafayette Public Library To Restrain Self-Identified Transvestites From Pushing To Recruit Children To Normalize Their Lifestyle Is In The Public Interest.*

The fact that the Library was served with a petition with 17,000 signatures collected by the Lafayette Citizens Against Taxes[22] and the fact that the Library was served with letters from a coalition of Pastors organized by the Louisiana Family Forum[23] asking that the library shut down the Drag Queen Story Hour for eroding community standards of decency shows that the public interest element resolves in the Petitioners favor by a landslide.[24]  While it is true that "transgender speech" is non-secular "religious speech," it is also true that "transgender speech" is "harmful unprotected obscene speech" that is dangerous when directed at minors.[25] Under the totality of the circumstances, the transvestite expedition at the Children's Library is a criminal act that violates La. Stat. Ann § 14:91.11 concerning the "Sale, exhibition, or distribution of material harmful to minors."[26] If the Court does not enjoin the Library temporarily, local law

---

[22] https://www.facebook.com/LafayetteStopTax/

[23] https://www.lafamilyforum.org/ (the Plaintiffs have no affiliation with FRC)

[24]  In *Jacobellis v. Ohio, 378* U.S. 184 (1964), the Court stated, "I shall not today attempt further to define the kinds of material I understand to be embraced within that shorthand description ["hardcore pornography"], and perhaps I could never succeed in intelligibly doing so. But I know it when I see it." See also *Miller v. California*, 413 U.S. 15, 3034 (1973).

[25] Just as a call by an Islamic Iman for immediate acts of violence through jihad is "religious speech," it also constitutes dangerous unprotected harmful speech. See *Schenck v. United States*, 249 U.S. 47 (1919) (shouting "fire" in a movie theater is not protected speech for purposes of the First Amendment).  "Obscenity is not within the area of protected speech or press." *Court v. State*, 51 Wis. 2d 683, 188 N.W.2d 475 (1971) vacated, 413 U.S. 911, 93 S. Ct. 3032, 37 L. Ed. 2d 1023 (1973) and abrogated by *State v. Petrone*, 161 Wis. 2d 530, 468 N.W.2d 676 (1991);; *State v. Weidner*, 2000 WI 52, 235 Wis. 2d 306, 611 N.W.2d 684;; *Ebert v. Maryland State Bd. of Censors*, 19 Md. App. 300, 313 A.2d 536 (1973). Obscenity is not protected expression and may be suppressed without a showing of the circumstances which lie behind the phrase "clear and present danger" in its application to protected speech. *Roth v. United States*, 354 U.S. 476, 485, 77 S.Ct. 1304, 1309, 1 L.Ed.2d 1498. *United States v. Gendron*, S24:08CR244RWS(FRB), 2009 WL 5909127 (E.D. Mo. Sept. 16, 2009) report and recommendation adopted, S2 4:08CR 244 RWS, 2010 WL 682315 (E.D. Mo. Feb. 23, 2010);; *Chapin v. Town of Southampton*, 457 F. Supp. 1170 (E.D.N.Y. 1978);; *Sovereign News Co. v. Falke*, 448 F. Supp. 306 (N.D. Ohio 1977);; *City of Portland v. Jacobsky*, 496 A.2d 646 (Me. 1985).

[26]  A .(1) The unlawful sale, exhibition, rental, leasing, or distribution of material harmful to minors is the intentional sale, allocation, distribution, advertisement, dissemination, exhibition, or display of material harmful to

minors, by a person who is not the spouse, parent, or legal guardian of the minor to any unmarried person under the age of eighteen years, or the possession of material harmful to minors with the intent to sell, allocate, advertise, disseminate, exhibit, or display such material to any unmarried person under the age of eighteen years, by a person who is not the spouse, parent, or legal guardian of the minor at a newsstand or any other commercial establishment which is open to persons under the age of eighteen years. (2) "Material harmful to minors" is defined as any paper, magazine, book, newspaper, periodical, pamphlet, composition, publication, photograph, drawing, picture, poster, motion picture film, video tape, video game, figure, phonograph record, album, cassette, compact disc, wire or tape recording, or other similar tangible work or thing which exploits, is devoted to or principally consists of, descriptions or depictions of illicit sex or sexual immorality for commercial gain, and when the trier of fact determines that each of the following applies: (a) The material incites or appeals to or is designed to incite or appeal to the prurient, shameful, or morbid interest of minors. (b) The material is offensive to the average adult applying contemporary community standards with respect to what is suitable for minors. (c) The material taken as a whole lacks serious literary, artistic, political, or scientific value for minors. (3) For the purpose of this section "descriptions or depictions of illicit sex or sexual immorality" includes the depiction, display, description, exhibition or representation of: (a) Ultimate sexual acts, normal or perverted, actual, simulated, or animated, whether between human beings, animals, or an animal and a human being; (b) Masturbation, excretory functions, or exhibition, actual, simulated, or animated, of the genitals, pubic hair, anus, vulva, or female breast nipples; (c) Sadomasochistic abuse, meaning actual, simulated, or animated, flagellation or torture by or upon a person who is nude or clad in undergarments or in a costume which reveals the pubic hair, anus, vulva, genitals or female breast nipples, or the condition of being fettered, bound, or otherwise physically restrained, on the part of one so clothed; (d) Actual, simulated, or animated, touching, caressing, or fondling of, or other similar physical contact with, a pubic area, anus, female breast nipple, covered or exposed, whether alone or between human*, animals or a human and an animal, of the same or opposite sex, in an act of apparent sexual stimulation or gratification; or (e) Actual, simulated, or animated, stimulation of the human genital organs by any device whether or not the device is designed, manufactured, and marketed for such purpose. (4) "Minor" means any person under the age of eighteen years. (5) "Video game" means an object or device that stores recorded data or instructions, receives data or instructions generated by a person who uses it, and, by processing the data or instructions, creates an interactive game capable of being played or viewed on or through a computer, gaming system, console, or other technology. B.(1) It shall be unlawful for a person who is not the spouse, parent, or legal guardian of the minor to invite or permit any unmarried person under the age of eighteen years of age to be in any commercial establishment that exhibits or displays any item, material, work or thing of any kind that is described in Subsection A of this Section. (2) Lack of knowledge of age shall not constitute a defense, unless the defendant shows that he had reasonable cause to believe that the minor involved was eighteen years of age or more and that the minor exhibited to the defendant a selective service card, driver's license, military identification card, birth certificate or other official or apparently official document purporting to establish that such a minor was eighteen years of age or more. (3) For the purpose of Subsections A and B of this Section, "exhibition or display" means the exhibition or display of material harmful to minors as defined in Subsection A of this Section so that, as displayed, depictions and representations of illicit sex or sexual immorality are visible to minors. (4) A commercial establishment shall not be in violation of this Section if the commercial establishment provides for a separate area for the exhibition or display of material harmful to minors and designates said area "NOT FOR MINORS" or similar words and the commercial establishment prohibits persons under the age of eighteen years from seeing or examining the contents of material harmful to minors. C. This section does not preempt, nor shall anything in this section be construed to preempt, the regulation of obscenity by municipalities, parishes and consolidated city parish governments; however, in order to promote uniform obscenity legislation throughout the state, the regulation of obscenity by municipalities, parishes and consolidated city parish governments shall not exceed the scope of the regulatory prohibitions contained in the provisions of this section. D. Prior to selling material harmful to minors as provided for by this Section, a commercial establishment shall require the individual purchasing the material harmful to minors to provide a driver's license, selective service card, military identification card, birth certificate, or other official form of identification which on its face establishes the age of the person as eighteen years or older. E. Whoever is found guilty of violating the provisions of this Section shall be fined not less than one hundred dollars nor more than two thousand dollars or imprisoned for not more than one year, or both.  In view of La. Stat. Ann § 14:91.1, the transvestite Story Hour must be shut down because it is and unlawful exhibition that is injurious to the children of Lafayette. To begin with the self-identified

enforcement and the local District Attorney's office just might arrest the Children's librarian and the self-identified transvestites for violating La. Stat. Ann § 14:91.11 due to the promoting of several civic leaders who are prepared to make that request. To avoid that scenario and to save judicial economy, the Court should issue a temporary restraining order.  This case is taking place in Lafayette Louisiana, not San Francisco.

A temporary restraining order is in the public's interest because the United States Supreme Court has made it abundantly clear that the States have a compelling interest to uphold community standards of decency. *Paris Adult Theatre I v. Slaton*, 413 US 49 (1973).  "Any school boy knows that a homosexual act is immoral, indecent, lewd, and obscene.  Adult persons are even more conscious that this is true." *Schlegel v. United States*, 416 F.2d 1372, 1378 (Ct. Cl.1969).  Despite the best efforts of Secular Humanists to desensitize society, the fact remains that "to simply adjust the definition of obscenity to social realities has always failed to be persuasive before the Courts of the United States." *Ginsberg v. New York*, 390 U.S. 629, 639–40, 88 S. Ct. 1274, 20 L. Ed. 2d 195 (1968); *Mishkin v . State of New York*, 383 U.S. 502, 509, 86 S. Ct. 958, 16 L. Ed. 2d 56 (1966); and *Bookcase, Inc. v. Broderick*, 18 N.Y.2d 71, 271 N.Y.S.2d 947, 951, 218 N.E.2d 668, 671 (1966).[27]

---

transvestites and their supportive librarian counterparts are not the "spouse, parent, or legal guardian" of the children that they intend to seduce and target with their toxic obscene ideology that bucks common sense. The self-identified transvestites and their librarian counterparts are all over the "age of 18. " They jointly intend to exhibit and display a sexually charged sermon with stimuli that includes "tangible works" in a quasi-commercial taxpayer funded facility that has the effect of conveying that Secular Humanism is the official religion of the State. The entire exhibition is unequivocally calculated to "incite or appeal to the prurient, shameful, or morbid interest of minors." The disturbing part is that the librarians and self-identified transvestites are well aware of it. Based on the unbelievable amount of public outrage, there can be no dispute that the "the material is offensive to the average adult applying contemporary community standards with respect to what is suitable for minors."

[27] Issuing a temporary restraining order is in the public's interest because it will strengthen the integrity of the judiciary. "the legitimacy of the courts ultimately rests upon the respect accorded to its judgments. *Republican Party of Minn. v. White*, 536 U. S. 765, 793 (2002) (KENNEDY, J., concurring).  The Public is sick of the government's unconstitutional entanglement with the LGBTQ church. *Obergefell v. Hodges*, 135 S.Ct. 2584 (2015) and *United States v. Windsor*, 133 S. Ct. 2675, 186 L. Ed. 2d 808 (2013) are rife with judicial dishonesty centered on an unprincipled ploy. It is why Justice Kennedy stepped down in the wake of the 7 to 2 decision in *Masterpiece*

## IX  CONCLUSION

The Children's public library section is not a designated public forum. The Drag Queen Story Hour is non-secular activity. The evidence shows that the Library has been too involved in sponsoring, hosting, promoting, and endorsing the event that targets children. According to the guidelines, "the library also reserves the right to relocate a group to a different meeting room with in the facility."[28] Even if the event was moved to a designated public forum in the library, the event would still need to be shut down because it is predicated on unprotected speech that is harmful to minors La. Stat. Ann. § 25:214. Even if the event was moved to a different section of the library and if children were allowed to attend, the Library would still need to be enjoined because the Library is refusing to allow a competing narrative to be offered because the Library employees are using their position in government to favor the religion of Secular Humanism over non-religion and over other religious worldviews.[29] The motion should be granted.

Respectfully Submitted,

---

*Cakeshop v. the Colorado Civil Rights Commission*, 584 U. S. ___ (2018). There is no such thing as a partial civil rights movement. Even non-obvious classes within a suspect class are guaranteed equal protection under the law. *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 96 S. Ct. 2574, 49 L. Ed. 2d 493 (1976). If marriage really is an "existing right," "individual right," "fundamental right" based on a "personal choice" for self-identified homosexuals under the Equal Protection and Due Process Clauses in the wake of *Obergefell*, then very obviously marriage must be an "existing right," "individual right," "fundamental right" based on a "personal choice" self-identified zoophiles, polygamists, and objectophiles. *Zablocki v. Redhail*, 434 U.S. 374, 384 (1978) (fundamental right); *Cleveland Bd. of Educ. v. LaFleur*, 414 U.S. 632, 63940 (1974) (personal choice); *Loving v. Virginia*, 388 U.S. 1, 12 (1967) (existing right/individual right); *Lawrence v. Texas*, 539 U.S. 558 (2003) (intimate choice). The government is prohibited under the Establishment Clause from respecting, endorsing, or recognizing an form of parody marriage because it has the effect of putting "religion over non-religion." Just as government officials may not favor or endorse one religion over others, so too officials "may not favor or endorse religion generally over non-religion." *Lee v. Weissman*, 505 U.S. 577, 627, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992)(Souter, Justice, concurring)(citing *County of Allegheny v. ACLU*, 492 U.S. 573, 589-94, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989). So here is the bottom line, the Defendant's enforcement of (1) gay marriage policy, (2) government paid for sex change operations, (3) transgender bathroom policies, (4) the government's decision to allow citizens to change their birth certificates, (5) government sanctioned pronoun changes are all unconstitutional for the same reasons that the Children's Librarian's decision to host the Drag Queen Story Hour in the Children's division of the library is.
[28] http://lafayettepubliclibrary.org/wp-content/uploads/2010/01/Library-Meeting-Room-Guidelines-12-15-08.pdf
[29] Other Plaintiffs will join in on this motion or file their own. Attorney Brook Burris is still taking steps to appear Pro Hac. Plaintiff Sevier is still trying to get the members of the Tennessee Bar off of his back so that he can appear as attorney of record for some of the Plaintiffs with the Mrs. Burris.

/s/Rich Penskoski/
WARRIORS OF CHRIST
SPECIAL FORCES OF LIBERTY
1000 Renaud Dr Lot 163
Scott, LA 70583
(973) 941-2871
Roger Pappa Delta Bravo

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this document and attached exhibits were mailed with adequate postage to the Defendants in this actions on September 25, 2018 to Teresa Elberson, 301 West Congress Street Lafayette, LA 70501;; John Bel Edwards, 900 N 3rd St #4, Baton Rouge, LA 70802;; Jeffrey Martin Landry at 1885 North Third Street Baton Rouge, LA 70802;; Hon. Stuart R. Shaw 615 East Carroll Street, Coushatta, LA 71019, Joel Robideaux, P.O. Box 4017-C, Lafayette, LA 70502.

/s/Rich Penskoski/