**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF LOUISIANA**
**AT LAFAYETTE**

|  |  |
|---|---|
| AARON GUIDRY, *et al.,* | |
| Plaintiffs, | |
| v. | CIVIL ACTION NO. 6:18-CV-01232 |
| TERESA ELBERSON, *et al.* | |
| Defendants. | |
| *c/w* | JUDGE ROBERT SUMMERHAYS |
| AMBER ROBINSON, MATTHEW HUMPHREY, | |
| Plaintiffs, | |
| v. | MAG. JUDGE PATRICK HANNA |
| TERESA ELBERSON, | |
| Defendant. | |

**MEMORANDUM IN SUPPORT OF INTERVENORS' MOTION FOR**
**TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

**INTRODUCTION**

Intervenors are library patrons who intend to use a Lafayette Public Library (the "Library") meeting room for an event that teaches individuality, empathy, anti-bullying and acceptance to children. Titled "Drag Queen Story Time," the event self-evidently involves drag queens reading stories to children.[1] As this Court is undoubtedly aware, plans to hold this event spurred the instant

---

[1] Although similarly titled, "Drag Queen Story Time" is not affiliated with "Drag Queen Story Hour," which has held similar events around the country and throughout the world—in New Orleans, Boston, Los Angeles, and Tokyo, for example. See www.dragqueenstoryhour.org

litigation as Plaintiffs—the soi-disant "Warriors for Christ"—sued the Library, the Louisiana governor and attorney general, the mayor of Lafayette and others, ostensibly to prevent the use of the Library's facilities for the event. Although intervenors planned to hold the event before the instant litigation ensued, they previously have not been parties to the suit, and their interests have not been represented. They now intervene to seek a temporary restraining order and preliminary injunction to protect their First Amendment rights of assembly and expression.

On October 16, 2018, the parties (Plaintiffs Aaron Guidry and Mark Christopher Sevier, joined by Tammy Parker Pratt and Joy C. Rabalais on behalf of Defendants Teresa Elberson and Joel Robidaux, respectively) appeared for a motions hearing before Magistrate Judge Patrick J. Hanna. Ms. Elberson, in her capacity as librarian, voluntarily agreed through counsel to "stand down" on planning a Drag Queen Story Hour for the duration of the lawsuit.  Subsequently, Ms. Elberson's counsel "agreed to streamline all reservation requests directed toward the library, in an effort to ensure compliance with the agreement to stand down," during a telephone status conference on Dec. 4, 2018, according to the Court's minute entry. Doc. 124.

As a result of these discussions and the agreement to "stand down," the Library has issued a policy requiring competition of a form in an apparent effort to forbid the use of its facilities for the aforementioned "Drag Queen Story Time" event. *See* Ex. 1. The form provides notice of the instant litigation and the Library's agreement to "stand down on planning a Drag Queen Story Hour." *Id*. The form requests "confirmation from you that the purpose of your use of the Lafayette Public Library's meeting room does not in any way pertain to 'Drag Queen Story Hour,' directly or indirectly." *Id*. The form demands the applicant's signature in acknowledgment of this prohibition; the failure to sign and return the form "will result in a cancellation of your reservation

of the meeting room." The form further threatens Library users with litigation if they hold or plan to hold a Drag Queen Story Time event.

This policy is an egregious infringement of intervenors' rights under the First Amendment to the U.S. Constitution. It is a prior restraint based on content, which is presumptively invalid and requires strict scrutiny. Although the form purports to "delay any such meeting request" until "relevant rulings from the Court are made," it effectively slams the Library's door in the face of intervenors, whose rights to use the public facility are equal to those of any patron or applicant, including the self-styled moral crusaders serving as Plaintiffs in this litigation. To unilaterally deny them access to this limited public forum, without due process, based on the misguided perception of or disagreement with what could be expressed, is simply rank discrimination. This practice is flagrantly unconstitutional and its use must be discontinued immediately.

## ARGUMENT

**I.     This Court Must Grant a TRO Because Defendant's Practice Is An Unconstitutional Prior Restraint on Speech.**

### A. Legal standard

To obtain a temporary restraining order, the movant must establish four factors: 1) a substantial likelihood of success on the merits; 2) a substantial threat that failure to grant the inunction will result in irreparable injury; 3) the threatened injury outweighs any damage that the injunction may cause the opposing party; and 4) the injunction will not disserve the public interest. *Meaux v. La. Office of Governor*, 2017 U.S. Dist. LEXIS 19319 *3 (W.D. La. Feb. 10, 2017) (citing *Lakedreams v. Taylor*, 932 F. 2d 1103, 1107 (5th Cir. 1991)).  The factors to be considered for the issuance of a preliminary injunction are identical. *See Planned Parenthood of Gulf Coast, Inc. v. Gee*, 837 F.3d 477, 488 (5th Cir. 2016).

3

"When analyzing the degree of 'success on the merits' that a movant must demonstrate to justify injunctive relief, the Fifth Circuit employs a sliding scale involving balancing the hardships associated with the issuance or denial of a preliminary injunction with the degree of likelihood of success on the merits." *McWaters v. Federal Emergency Mgmt. Agency*, 408 F. Supp. 2d 221, 228 (E.D. La. 2006). "Moreover, when the other factors weigh in favor of an injunction, a showing of some likelihood of success on the merits will justify temporary injunctive relief."

### B.  Defendant bears the burden of proof

For cases in which fundamental First Amendment rights are at stake, the U.S. Supreme Court has found that the government, not the Plaintiff, must bear the burden of proving not only a compelling government interest, but that less restrictive means are inadequate to serve that interest. *Ashcoft v. ACLU,* 542 U.S. 656, 666 (2004); *Gonzales v. O Centro Espirta Beneficente Unio do Vegtal,* 546 U.S. 418, 429 (2006). To guard against the threat against government censorship of First Amendment rights, the "Constitution demands that content-based restrictions on speech be presumed invalid," and that the Government bear the burden of showing their constitutionality." *Ashcroft,* 542 U.S. at 660 (*citing R.A.V. v. City of St. Paul,* 505 U.S. 377, 382 (1992), *U.S. v. Playboy Entertainment Group,* 529 U.S. 803, 817 (2000)).

### C.  Intervenors are highly likely to succeed on the merits of their claim

The First Amendment is applicable to the states by virtue of the Fourteenth Amendment. *Everson v. Bd. of Educ.*, 330 U.S. 1, 8 (1947). Thus the U.S. Constitution commands that a state "shall make no law … abridging the freedom of speech." U.S. Const. amend. I.

For First Amendment purposes, "the existence of a right of access to public property and the standard by which limitations upon such a right must be evaluated differ depending on the character of the property at issue." *Chiu v. Plano Indep. Sch. Dist.*, 260 F.3d 330, 344, 2001 U.S.

App. LEXIS 16592, *27 (5th Cir. July 24, 2001) (citing *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37 (1983)). The U.S. Supreme Court has adopted a tripartite forum-based framework to analyze First Amendment issues involving governmentally owned property, identifying three types: the traditional public forum, the public forum created by governmental designation, and the nonpublic forum. *Id.* (citing *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.* 473 788, 802 (1985). Defendants have acknowledged that the Library is a limited public forum. Doc. 96-1 at 61 (citing *Kreimer v. Bureau of Police*, 958 F.2d 1242, 1259 (3d Cir. 1992), *Mainstream Loudoun v. Board of Trustees of the Loudoun County Library*, 24 F.Supp. 2d 552, 563 (E.D. Va. 1998)). The State's power to restrict speakers' access to this category of public forum is "subject to the same First Amendment constraints that apply to traditional public forums," i.e. strict scrutiny. *Id.* (citing *Estiverne v. La. State Bar Ass'n*, 863 F.2d 371, 376 (5th Cir. 1989), *Perry*, 460 U.S. at 45 ("the Constitution forbids a state to enforce certain exclusions from a forum generally open to the public even if it was not required to open the forum in the first place.")).

The current practice of the Library subjects intervenors (and other applicants whose planned use of the meeting room "pertains" to the event) to a prior restraint on speech, and as such it is presumptively invalid. *See Avis Rent A Car Sys v. Aguilar* (529 U.S. 11388, 1142, 120 S. Ct. 2029, 2032) (2000) (citation omitted) (noting that injunctions against speech are evaluated as prior restraints, which entails "the strictest scrutiny known to our First Amendment jurisprudence."); *Def. Distributed v. United States Dep't of State*, 838 F.3d 451, 472 (5th Cir. 2016) (citation omitted). The U.S. Supreme Court has stated that while "prior restraints are not unconstitutional *per se* … [a]ny system of prior restraint … comes before this Court bearing a heavy presumption against its constitutional validity." *FW/PBS, Inc. v. City of Dallas,* 493 U.S.

215, 225 (1990) (citation omitted). Defendants cannot meet the strict scrutiny standard and must discontinue this content-based prior restraint on speech.

### D.  Intervenors will suffer irreparable injury absent an injunction

Once the Court finds a likelihood that intervenors' constitutional rights are being violated, there is little question that the remaining factors also weigh strongly in favor or irreparable injury. The "loss of First Amendment freedoms for even minimal periods of time constitutes irreparable injury justifying the grant of a preliminary injunction." *Doe v. Landry*, 905 F.3d 290, 310, 2018 U.S. App. LEXIS 26965, *37 (5th Cir. Sept. 20, 2018) (citing *Texans for Free Enter. v. Texas Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013). It is well established that "the loss of First Amendment freedoms for even minimal periods of time constitutes irreparable injury," which justifies the grant of injunctive relief. *Jabr v. Rapides Parish Sch. Bd.,* 171 F. Supp.2d 653, 666, 2001 U.S. Dist. LEXIS 18572, *38 (W.D. La. Seo. 27, 2001) (citing *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981); *Elrod v. Burns*, 427 U.S. 347, 373, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976)). As demonstrated above, the practice used by the Library to prevent intervenors' planned event is violating their First Amendment rights. Absent injunctive relief, they will continue to suffer irreparable harm.

### E.  An injunction will not cause harm to anyone

A party cannot claim that an injunction will harm her if the conduct to be enjoined violates the Constitution; therefore, neither Plaintiffs nor Defendants can claim that termination of the Library's practice will cause them harm. The Library's practice obviously was created ad hoc as a result of this litigation, as a stopgap measure to appease Plaintiffs until other substantive legal issues in this case can be resolved. It was not used before this litigation, and neither party has suggested any need for it outside of this litigation. The practice directly targets only applicants

whose intended use of the Library's meeting room "pertains" to Drag Queen Story Time. Consequently, the only outcome of the practice's termination is that the events may proceed. Neither party has shown, nor can they show, that the event will cause them harm. On the other hand, intervenors seek an injunction that would allow them the access and use of a public forum. Such an injunction will remedy an ongoing constitutional violation and will cause no harm to others. If the current practice remains effective, intervenors "will be denied First Amendment Freedoms . . .  whereas [Plaintiffs and] Defendant[s] do not appear to be at any risk of suffering harm.  Thus in balancing the equities, the scale tips in favor" of the intervenors. *Wexler v. City of New Orleans*, 267 F. Supp. 2d 559, 568-569 (E.D. La. 2003).

Neither the "Warriors for Christ," nor Teresa Elberson, nor any agent of the Lafayette City-Parish Government has any legitimate interest or right in restricting fundamental freedoms of expression and speech. The practice employed in this case has a singular purpose—to prevent the speech and/or expression of one discrete, marginalized group of people, while preserving intact those same freedoms for everyone else. Such rank discrimination based on the content of the forbidden expression—storytelling to children—cannot be permitted to stand.

### F.  The public interest will be served by an injunction

Because the Library's policy inflicts an ongoing constitutional violation, the final factor likewise weighs in their favor. Because the Defendants' actions in depriving intervenors of their First Amendment rights are unconstitutional, the public interest is served by injunctive relief preventing future deprivations. *Torries v. Hebert*, 111 F. Supp. 2d 806, 823, 2000 U.S. Dist. LEXIS 23055, *46 (W.D. La. Aug. 28, 2000) (citing *Ingebretsen on Behalf of Ingebretsen v. Jackson Public School Dist.*, 88 F.3d 274, 280 (5th Cir. 1996)).

7

The public interest is always served by ensuring compliance with the Constitution and civil rights law.  *See*, *e.g.*, *Valley v. Rapides Parish School Board*, 118 F.3d 1047, 1056 (5th Cir. 1997) (finding that public interest would be undermined if unconstitutional actions of a school board were permitted to stand). The public "is best served by enjoining a [form] that unconstitutionally impairs First Amendment rights." *Forum for Acad. & Inst. Rights v. Rumsfeld*, 390 F.3d 219, 246 (3rd Cir. 2004). An injunction would eliminate the Defendant's ban on intervenors' exercise of free speech and the concurrent implication that creative expression requires government approval. "The public interest is best served by enjoining the effect of any ordinance which limits potentially constitutionally protected expression until it can be conclusively determined that the ordinance withstands constitutional scrutiny."  *Wexler*, id., at 569.

## <u>CONCLUSION</u>

For the reasons set out above, this Court should issue a temporary restraining order to allow Plaintiffs to proceed with their events on December 22, 2018 and January 2, 2018, and, in due course, issue a preliminary injunction protecting their rights.

Respectfully submitted by:

*/s/ Katie Schwartzmann*
*/s/ Bruce Hamilton*
Bruce Hamilton, La. Bar No. 33170
Katie Schwartzmann, La. Bar No. 30295
ACLU Foundation of Louisiana
P.O. Box 56157
New Orleans, Louisiana 70156
Telephone: (504) 522-0628
Facsimile: (888) 534-2996
Email: bhamilton@laaclu.org
           kschwartzmann@laaclu.org

*Counsel for Intervenors*

8

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 21st day of December, 2018, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system, and that service will be provided through the CM/ECF system. Copies were also sent to all counsel of record directly via electronic mail.

*/s/ Katie M. Schwartzmann*